G. W. McMANUS, Administrator of GUS McMANUS. v. SEABOARD
AIR LINE RAILWAY COMPANY.

(Filed 5 December, 1917.)

1. Railroads—Evidence—Nonsuit—Issues—Last Clear Chance.

Where there is evidence tending to show that the plaintiff's intestate had been employed by the contractor of defendant railroad company for the building of a temporary bridge over a river for the passage of its trains; that owing to a break in the coffer dam the plaintiff was required to work until 4:25 in the morning, when he laid some boards from a chute to the main track, and was lying down thereon, either asleep or dulled by fatigue, when he was run over and killed by defendant's train, approaching at the speed of 4 miles an hour upon a straight track for 300 or 400 feet, with a dim headlight, upon the lighted bridge: *Held*, a motion to nonsuit was properly denied, and the case was correctly submitted to the jury upon the issues of negligence, contributory negligence, and the last clear chance.

2. Railroads—Negligence—Last Clear Chance.

In the application of the doctrine of the last clear chance to railroads when the injury complained of has been received by a person down upon the track in front of an approaching train, it does not require that the person so injured should have been unconscious at the time, for it may be presented, in proper instances, when the claimant is in a position of such peril that ordinary efforts on his part will not avail to extricate him.

3. Evidence—Medical Experts—Railroads—Down on Track.

When relevant to the inquiry in an action against a railroad company for negligently running over and killing plaintiff's intestate while upon the defendant's track, it is competent for a medical expert, who hade made a professional examination, to testify, in answer to a question. that from the nature, condition and position of the wounds, the intestate was lying down at the time the injury causing death was inflicted.

Civil action, tried before *Webb, J.,* and a jury, at May Term, 1917, of Union.

The action was to recover damages for death of plaintiff's intestate, caused by the alleged negligence of defendant company, and on denial of liability, plea of contributory negligence, etc., the following verdict was rendered by the jury.

1. Was plaintiff's intestate killed by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. If so, did plaintiff's intestate by his own negligence contribute to the injury which caused his death? Answer: Yes.

3. If so, notwithstanding the negligence of plaintiff's intestate, could the defendant have avoided the injury which resulted in the death of plaintiff's intestate? Answer: Yes.

4. What damage, if any, is plaintiff entitled to recover? Answer: $800.

Judgment on the verdict for plaintiff, and defendant excepted and appealed, assigning for error chiefly the denial of its motion to nonsuit.

*Stack & Parker for plaintiff.*
*Cansler & Cansler and Frank Armfield for defendant.*

Hoke, J.  There was evidence tending to show that, in January, 1917, the defendant company and the Piedmont and Northern were using a temporary bridge or trestle over the Catawba River, near Mount Holly, N. C., and their trains running over a main track on said trestle, which was straight and approached in a straight line from the west for a distance of 300 to 400 feet; that the Piedmont and Northern were having this trestle made a permanent structure, or were building a bridge just above, and for that purpose had placed a dummy line over the trestle from the western bank to a chute in the middle of the stream, about 4 feet from the main track and parallel thereto, as far as it extended; that cars carrying dirt and other material were run out on the dummy track to the chute where the load was dumped in same, carrying it to the workmen below; that this work was being done by the Shiplett Concrete Company, and plaintiff's intestate was an employee of the latter company, whose duties were to dump the loads into the chute and clear the dirt and gravel from the tracks while the cars went back for another load; that owing to the conditions prevailing, the speed of regular railroad trains passing over the trestle was restricted to 4 miles per hour, and there were lights kept on the bridge at night, and there was also a headlight on the engine of defendant's train, though this was somewhat dim; that on the occasion in question there had been a break in a coffer dam in the river and the concrete company's entire force had been kept to the work till 2 o'clock, and plaintiff's intestate, engaged on his work at 4:25 a. m., was run over by a freight train of the Seaboard Company, approaching from the west; had both legs cut off, the right one close to the body, and the left just below the knee; was thrown to the river below, and died shortly thereafter.  There were also facts in evidence permitting the inference that the intestate had laid some boards from the chute to the main track and was lying down thereon and very likely asleep or dulled by fatigue at the time he was run over and killed.

On this evidence, as it appears in the case on appeal, the judgment overruling the motion to nonsuit was clearly correct, and the case was properly submitted to the jury on an issue presenting the question whether defendant company or its employees had negligently failed to avail itself of the last clear chance of avoiding the injury, a position approved and illustrated in many decisions of our Court dealing with the subject.  *Johnston v. R. R.,* 163 N. C., 431; *Henderson v. R. R.,* 159

McManus *v.* R. R.

N. C., 582; *Edge v. R. R.,* 153 N. C., 212; *Snipes v. Mfg. Co.,* 152 N. C., 42; *Farris v. R. R.,* 151 N. C., 483.

While the facts of this record do not necessarily call for the discrimination in view of some of the positions taken on the argument, we consider it not amiss to note that it is not always required for the application of this doctrine that the person injured or killed should have been unconscious, but the same may at times be presented when a claimant was in a position of such peril that it is evident that ordinary effort on his part will not avail to extricate him.

Speaking to this question in *Snipes' case,* the Court said: "Ordinarily, cases calling for application of the doctrine indicated arise when the injured person was down on the track, apparently unconscious or helpless, as in *Sawyer's case,* just referred to, or in *Pickett's case,* 117 N. C., 616, or in *Dean's case,* 107 N. C., 637; but such extreme conditions are not at all essential, and the ruling should prevail whenever an engineer operating a railroad train does or, in proper performance of his duty, should observe that a collision is not improbable, and that a person is in such a position of peril that ordinary effort on his part will not likely avail to save him from injury; and the authorities are also to the effect that an engineer in such circumstance should resolve doubts in favor of the safer course," citing *Clark's case,* 109 N. C., 430-443-44, and *Bullock's case,* 105 N. C., 180.

It was also urged for error that Dr. McCoy, a witness for plaintiff, who had made a professional examination of the intestate at the time, was allowed, over defendant's objection, to testify that, "from the nature, condition and position of the wounds, he was of opinion that the intestate was lying down at the time the same was inflicted." It will be noted that this witness, admitted to be an expert, spoke from a professional and personal examination of the intestate, and the answer, to our minds, was clearly within the domain of expert opinion. Both question and answer are approved and upheld, we think, in *Ferrebee v. R. R.,* 157 N. C., 290; *Parrish v. R. R.,* 146 N. C., 125; *S. v. Jones,* 68 N. C., 443. The case of *Pace Mule Co. v. R. R.* in no way conflicts with this position. There the expert was allowed to testify that certain mules had died from being jammed in a railroad car. This was not an opinion on facts which the witness had obtained and noted himself or as they might be accepted by the jury, but was merely a deduction of the witness as to a much controverted fact and one which had no natural, certainly no necessary, connection with facts coming within his knowledge and observation as an expert.

There is no error, and the judgment for plaintiff must be affirmed.

No error.