ROWLAND BARNES, Administratrix, v. SEABOARD AIR LINE RAILROAD COMPANY AND AMERICAN RAILWAY EXPRESS COMPANY.

(Filed 15 October, 1919.)

**Employer and Employee—Master and Servant—Carriers of Goods—Railroads—Express Companies—Negligence—Concurring Negligence—Evidence—Nonsuit—Trials.**

The defendant express company hired among the bystanders, including the plaintiff's intestate, men to help put a shafting, weighing about 2,000 pounds, from its trucks into its express car. There was evidence tending to show that the trucks were properly placed at first with reference to

the car door, and when the men were in the act of placing the front end of the shafting in the car door the codefendant railroad company suddenly started the train, moving it about thirty feet, making it necessary to change the direction of the shafting. The trucks could not be placed at right angles, the proper position, because of express packages there, and while loading in this position the end of the shafting slipped from the truck and caused the death of the intestate; that had the trucks been at right angles to the car door, as formerly, the injury would not have been inflicted, and that in the then position of the trucks insufficient help was furnished for the safe loading of the shafting: *Held*, error to exclude testimony of one of long experience in such work as to the danger of loading the shaft under the changed conditions; that the one holding the handle of a truck was agent of the express company, that its station agent was present, their negligence, if any, being that of defendant express company, as also the answer of a witness to a question to state from what he saw the cause of the dropping of the shaft from the truck; and further, *held*, under this and the other testimony, sufficient for the jury upon the question of defendant express company's failing to use reasonable care; concurrent negligence of defendant railroad in moving its train under the circumstances, contributing to the death of the intestate, and the negligent failure of defendant express company in failing to furnish sufficient and experienced help.

WALKER, J., dissenting; ALLEN, J., concurring in the opinion of WALKER, J.

APPEAL by plaintiff from a nonsuit directed by *Stacy, J.,* at March Term, 1919, of ROBESON.

*Johnson & Johnson for plaintiff.*
*McIntyre, Lawrence & Proctor for railroad company.*
*McLean, Varser, McLean & Stacy for express company.*

CLARK, C. J. This was an action for the wrongful death of plaintiff's intestate, a farmer about twenty-one years of age, who had come to Lumberton on some business. While at the station of the defendant railroad company the agent of the express company engaged him to help load a heavy iron shafting on the express car in the defendant railroad's eastbound train. The shafting was 20 to 30 feet long, about 8 inches in diameter, in a box about 12 inches square, and estimated to weigh about 2,000 pounds. The loading was done under the supervision of the agent of the express company, who hired three bystanders to assist the clerk of the express office. The agent was a lady and rendered no assistance beyond her supervision. The shafting was placed on two trucks at right angles to the door of the express car. The deceased was one of those who had hold of the end of the shafting nearest the express car and the others were on either side of the box behind him. While the men were in the act of placing the front end of the shafting in the car door the defendant railroad company suddenly, without warning, started the

BARNES *v.* R. R.

train, moving it up about thirty feet, which made it necessary to change the direction of the shafting. Express packages had been piled on the ground and on that account the truck farthest from the train could not be moved up so as to be at right angles to the door again. The truck nearest the train was moved forward to the express car door in its new position and it was then removed, leaving the front end of the shafting on the shoulders of the four or five men while the other end rested on the extreme corner of the rear truck, where the men bearing the front end and looking towards the car door could not see it. In the attempt to shove the boxed shafting into the car, in this diagonal manner, there was nothing to prevent it rolling off the truck but there would have been if the shafting had been shoved in at right angles. All of the men were near the car door as it naturally required their united strength to lift the front end of the 2,000-pound package. The rear end of the shafting twisted off the rear truck as the change to a diagonal had moved it to the corner of that truck from which it tumbled, falling to the ground with great violence. The end nearest to the train bounded upward with such violence that it was forcibly wrested from the shoulders of the men who were carrying it and the deceased, who was in the acute angle nearest the train, was caught between the shafting and the train and his skull smashed causing his death.

The witness Holloway, who was a lumber man with thirty years experience in doing similar work to loading this shafting, testified that the method pursued in attempting to put on the shafting after the moving forward of the car looked so dangerous to him that he was tempted to protest but refrained from doing so for fear he might seem officious. He further testified that when the shafting was first placed for loading at right angles to the train it was squarely on the truck and would not have fallen off, but that in moving the end next to the train after the train had pulled up the further end of the shafting was turned diagonally on the extreme edge of the truck, and no one was there nor any effort made to keep the shafting from falling off. This witness also testified that if the shafting could have again been placed at right angles to the car it could have been loaded with safety because it would not have rolled off the truck. The evidence showed, however, that the express had been piled on the ground in such manner that it was impossible to move the truck around in a suitable position, that is, at right angles to the train. The train was not moved back 30 feet to the original position, thus avoiding the danger of attempting to put the shafting on in this diagonal manner. The agent of the express company was standing there, and also a clerk in the express office who had hold of the truck handles and could see the position of the rear end of the shafting, but no effort was made to adjust the shafting or place some

one there to hold it, and it is doubtful if one man could have done this when the movement of the four or five men at the front end would necessarily constantly change the position of the shafting on the rear truck.

The plaintiff also offered to show that the witness Davis, who was clerk of the express company at the time deceased was killed, was employed for the company by Mrs. Thomas, its agent at that station, to assist her. It was error to exclude this, as it tended to show that he was a vice-principal, and as such had charge of loading the shafting, and his conduct in failing to place some one at the rear truck to prevent the falling of the shafting, if found to be negligent, was the negligence of the company and not that of a fellow-servant of the intestate, who was a bystander picked up for the occasion. It was also error to exclude .the testimony that Mrs. Thomas, the agent of the express company, was present superintending the loading of the shafting, for her negligence, if any, in supervising the loading, was also that of the company.

It is not denied that the falling of the shafting from the truck was the immediate cause of the death of the deceased. The witness Holloway, who was present and described very intelligently the whole occurrence, was asked, "From what you observed of it, what caused the shafting to drop from the truck and fall to the ground in the manner you have described?" This was excluded as opinion evidence, which was error, for he was asked to state what he saw. It may be that he would have said that the moving of the train forward causing the diagonal position of the shafting in order to put it on the car caused the falling of the rear end from the truck, or he may have given some other reason. We do not know exactly what he would have said, but the plaintiff was entitled to have the facts laid before the jury that they might have drawn their own inferences as to the cause of the injury. This, therefore, was error as to both the defendants. He was also asked, "State what effect the pulling of this train up some thirty feet, as you describe, had upon the ability of these men to load it upon the car." He answered, "It put the shafting in a very much more unsafe position than it was at first." On motion of the defendant railroad company this answer was stricken out, which was a very material error. This witness without objection had stated that he had had experience for thirty years as a sawmill man in loading timber, and that in his opinion a sufficient number of men were provided to properly load the shaft into the train when the shaft was in the original position, but in the new position, where the thing actually happened, it looked pretty dangerous to him. This was evidence sufficient to go to the jury tending to show negligence of the defendant railroad in suddenly moving the train thirty feet forward and in not moving it back to the original position when the

shafting had been properly placed for loading at right angles to the train. The authorities in charge of the train saw the position of the shafting and stopped the car at that point where this witness stated that it could have been safely loaded. The defendant railroad has given no evidence or explanation why the car was suddenly moved forward nor why it did not move the train back to the original position, though the witness stated that the change of position made the loading very much more unsafe.

There was evidence that the express car was something like eight feet wide on the inside and the doors were about five feet wide. It is a matter of common observation, hardly needing evidence, that four or five men could not lift a piece of shafting 2,000 pounds in weight, but if it was placed at right angles to the car and shoved forward eight feet into the car so as to relieve that much weight, the four or five men could then take hold of the rear end and by "slewing" it around shove it forward into the car. The witness Holloway testified that the loading could have been done in that manner, that is, by the shafting being put in at right angles, by four or five men. It would be a reasonable inference from the evidence, and from the knowledge of the jurors themselves, that if the weight of the front end was not thus reduced by being put in the car that it would have taken double the number of men or more to lift up the shafting and put it in.

The witness testified that to attempt this work in the way which became necessary after the car was moved forward was very much more dangerous.

The Court has held in many cases that the testimony of the witness from his own observation as to the cause of the accident was competent. *Britt v. R. R.,* 148 N. C., 37; *Arrowood v. R. R.,* 126 N. C., 632; *Raper v. R. R., ib.,* 565; *Burney v. Allen,* 127 N. C., 476. In *Britt v. R. R., supra,* it was held competent to ask the witness, "State whether or not in your opinion you could have straightened the log on the skid before it fell and hurt you by the use of your cant-hook, if the team had not started." It was therefore competent for the witness in this case to state that the shafting could have been safely loaded on the car when it first stopped where the shafting was at right angles to the door, but that the moving of the car forward by causing the attempt to load the shafting diagonally caused the injury. This was evidence to go to the jury of the negligence of the railroad in moving the car suddenly forward and in not moving it back.

In *Britt v. R. R., supra,* the Court stated the principle as follows: "The exception to the general rule that witnesses cannot give their opinion is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill or learning, but it includes the evidence

BARNES *v.* R. R.

of common observers testifying to the result of their observations made at the time in regard to common appearances, facts and conditions which cannot be reproduced and made palpable to a jury."

Among many other cases than those just cited to this purport are: *S. v. Edwards,* 112 N. C., 901; *Taylor v. Security Co.,* 145 N. C., 389; *Ives v. Lumber Co.,* 147 N. C., 308; *Bennett v. Mfg. Co., ib.,* 621; *Murdock v. R. R.,* 159 N. C., 132.

There was evidence in this case tending to show that plaintiff's intestate was killed, without any fault of his, while engaged in the proper performance of the duty for which he was employed under the personal supervision of the agent, and also of the clerk or assistant agent of the express company, and tending to show that there was negligence in the loading of the shafting due in part to the railroad company moving the car and in not moving it back when it saw the situation in which this had placed those who were loading the shafting. Whether the conduct of the loading, if negligent, was the negligence of both defendants or of one only was a matter for ascertainment by the jury. The manner of loading called forth exclamations from bystanders. There was evidence which tended to show that the deceased came to his death not as a result of an unavoidable accident, but as the direct and proximate result of the negligent acts of the defendants.

The shafting was of enormous weight, some 20 or 30 feet long, and three inexperienced men picked up from the bystanders at the station, with the assistance of the driver and clerk, were used to put it on the car.

Without repeating the evidence, it is sufficient to say there was evidence sufficient to go to the jury tending to show:

1. That the express company failed to furnish plaintiff's intestate with a sufficient number of competent, experienced fellow-servants.

2. That both defendants failed to use reasonable care and precaution for the safety of plaintiff's intestate.

3. That the defendant railroad company, in suddenly pulling up its train while plaintiff's intestate and his fellow-servants were in the act of loading the shafting in a safe manner, contributed to the death of the deceased, and this, concurrently with the negligence of the express company, was the proximate cause of the death of plaintiff's intestate.

To recapitulate the testimony more fully and cite apposite precedents might prejudice the cause of the defendants on another trial. It is sufficient to say, and we intend to say no more than that, that there was evidence sufficient to go to the jury tending to show that the death of the intestate was caused by the concurrent negligence of both defendants. It may be that on fuller development of the case it may appear that neither, or only one, of the defendants was guilty of negligence that contributed to the death of the plaintiff's intestate.

It is proper to say that in preparing this opinion we have been very much aided by the very intelligent and fair statement of the facts and of the law set out in the brief of the learned counsel for the plaintiff.

The nonsuit must be set aside as to both defendants.

WALKER, J., dissenting: I cannot agree with the conclusion of the Court in respect to the liability of the defendant Seaboard Air Line Railway Company, because I am convinced, after a careful perusal of the evidence and a deliberate consideration of it, that there is none which implicates the railway company as a negligent or delinquent defendant, and if there was negligence on the part of its codefendant, the express company, the railway company did not participate therein, by co-operation or otherwise, nor was it in any way to blame, in law or in fact, for the accident, whereby the plaintiff's intestate was killed. My opinion, therefore, is that the nonsuit as to the railway company was properly entered by the Superior Court, and that its ruling in that regard should be sustained.

ALLEN J., concurring in dissent.