MARY G. BRUCE, ADMINISTRATRIX OF THE ESTATE OF WALTER B. BRUCE, DECEASED, v. O'NEAL FLYING SERVICE, INC.

(Filed 17 July, 1951.)

**1. Appeal and Error § 51a—**

Where it is determined on appeal that the evidence was sufficient to overrule nonsuit, the decision is the law of the case, and upon a subsequent trial nonsuit is correctly denied upon evidence which, though varying in minor details, is substantially the same as that upon the first hearing.

**2. Evidence § 49: Aviation § 7—Expert may be allowed to invade jury's province as to ultimate facts in regard to matters of science, art, or skill.**

In an action to recover for death of a gratuitous passenger in an airplane killed as a result of an accident allegedly caused by the negligence of the pilot, it is competent for expert witnesses who saw the accident and were personally familiar with the type of plane used, to testify that in their opinion the accident was caused by the pilot's attempt to make more turns in the spin than were safe from the altitude attained, since the testimony relates to composite facts based upon the witnesses' knowledge, skill and experience as experts from observation of the movements and actions of the airplane, and comes within an exception to the rule that opinion evidence may not invade the province of the jury.

**3. Appeal and Error § 39e—**

The fact that expert testimony is technically in excess of the permissive bounds of such evidence will not be held for reversible error when it could not have prejudiced appellant.

**4. Appeal and Error § 39b—**

Where there is insufficient evidence to justify the issue of contributory negligence, any error in the charge relating to this issue cannot be held prejudicial on defendant's appeal.

**5. Negligence § 16—**

Contributory negligence must be pleaded by alleging facts to which the law attaches contributory negligence as a conclusion.

**6. Negligence § 17—**

A defendant relying on contributory negligence must prove facts from which the inference of contributory negligence may be drawn by men of ordinary reason, and evidence which raises a mere conjecture is insufficient.

**7. Aviation § 7: Negligence § 21—**

In an action to recover for the death of a gratuitous passenger in an airplane upon allegations that the fatal accident was caused by negligence of the pilot, defendant's allegations that the fatal maneuver was inherently dangerous and that intestate acquiesced in the operation of the plane cannot justify the submission of the issue of contributory negligence to the jury when all the evidence is to the effect that the maneuver was not dangerous when properly done and that under the circumstances even an experienced pilot should not have attempted, while a passenger, to have interfered with the controls during the maneuver by the pilot in command.

Barnhill, J., concurs in result.

Appeal by defendant from *Parker, J.,* and a jury, at November Civil Term, 1950, of Wake.

Civil action by plaintiff to recover damages for the alleged wrongful death of her intestate husband resulting from an airplane crash which occurred during an air show staged by the defendant in dedicating its new airport near Raleigh. The intestate was a guest passenger in an airplane operated by one of defendant's pilots. The airplane crashed while engaged in a stunt-maneuver.

Issues were submitted to and answered by the jury as follows:

"1. Was H. L. Bobbitt an employee or agent of the defendant, O'Neal Flying Service, Incorporated, at the time he permitted plaintiff's intestate, Walter B. Bruce, to enter the airplane? Answer: 'Yes.'

"2. If so, was H. L. Bobbitt acting within the scope of his authority? Answer: 'Yes.'

"3. Was the plaintiff's intestate, Walter B. Bruce, killed by the negligence of the defendant, as alleged in the complaint? Answer: 'Yes.'

"4. Did the plaintiff's intestate, Walter B. Bruce, by his own negligence contribute to his death? Answer: 'No.'

"5. What amount, if any, is the plaintiff entitled to recover? Answer: '$15,600.00.' "

From judgment on the verdict, the defendant appealed to this Court, assigning errors.

*Simms & Simms and Douglass & McMillan for plaintiff, appellee.*
*Murray Allen for defendant, appellant.*

Johnson, J. The defendant's exceptive assignments of error relate to: (1) the refusal to nonsuit; (2) the admission of evidence; and (3) the charge of the court.

1. *The refusal to nonsuit.*—This case was here at the Fall Term, 1949, on appeal by the plaintiff from judgment of nonsuit at the close of the

evidence. The decision, reversing the lower court for failure to submit the case to the jury, is reported in 231 N.C. 181, 56 S.E. 2d 560, where the background facts are stated in pertinent detail.

"It is settled law that a decision of this Court on a former appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal." *Maddox v. Brown,* 233 N.C. 519, top p. 521, 64 S.E. 2d 864. Where the question of nonsuit has been decided in favor of the plaintiff on a prior appeal, as in the instant case, it suffices for the plaintiff on retrial to offer substantially the same evidence, and a motion to nonsuit may not be resolved against the plaintiff unless the evidence on retrial varies in a material aspect from that offered on the first trial. *Maddox v. Brown, supra.*

An examination of the record on each appeal discloses that the defendant offered no evidence at either trial. The same witnesses testified at both hearings. Some variations are disclosed in the details of the testimony, but not in matters of substance. The evidence on the retrial was substantially the same as at the first hearing. This made it a case for the jury. *Maddox v. Brown, supra.*

2. *The admission of evidence.*—The gravamen of plaintiff's cause of action as alleged in the complaint and developed by the evidence is: that the defendant Flying Service was giving a "demonstration of safe flying"; that as part of the demonstration three airplanes were to go up in formation to an altitude of about 2,000 feet. Then each airplane was to descend, one after another, in an oscillating, spiral movement, make three turns or "spins," and then pull out into normal flight at a height of about 500 feet above the ground; that the airplane in which the intestate was riding as a guest passenger, piloted by H. L. Bobbitt, was the lead airplane in the formation; that the pilot ascended to an altitude of about 1,800 feet and then nosed into the spin; that instead of pulling out into normal flight after completing three spins, allegedly he negligently attempted to make five or more spins and in doing so crashed on the ground.

Plaintiff's cause of action is grounded upon the theory that the spin-maneuver in which the parties were engaged is an ordinarily "safe maneuver for an airplane when properly done," but that the pilot Bobbitt failed to exercise due care in controlling the airplane, in that he failed to pull out of the spin at a safe height.

Against the foregoing background we come to consider the defendant's exceptions to certain portions of the testimony of R. H. Edwards, Jr., and W. S. O'Neal, who saw the fatal maneuver and crash and, as qualified experts, described the movements of the airplane and gave opinions as to the cause of the crash. Here follows the pertinent parts of the testimony

(admitted over objections and exceptions duly made and preserved),—first the testimony of the witness R. H. Edwards, Jr.:

"Q. What is your opinion, Mr. Edwards, as to the safety of that maneuver known as a spin?

"A. My opinion is that in a proper aircraft with a properly trained pilot at a proper altitude it is a safe maneuver because I have done it hundreds of times.

"Q. Do you have an opinion satisfactory to yourself as to the number of turns that could be made in a spin with safety from an altitude of 1800 feet?

"A. Yes, sir, I have an opinion.

"Q. How many turns could be made with the Aeronca 'plane, a 'plane of this type that is in question?

"The Court: You mean in a spin?

"Mr. Douglass: Yes, sir.

"Q. From 1800 feet in a spin?

"A. Three turns would be the limit, sir, with safety,—and that would be the absolute limit.

"Q. I wish you would state whether or not there was anything in the appearance of the maneuver that was then being made with the spin that indicated to you that there was anything mechanically wrong with the 'plane.

"A. I do not think there was anything mechanically wrong.

"Q. State whether or not the turns that were made in this spin were normal turns.

"The Court: I think he can express his opinion as an expert.

"A. Yes, sir, they were normal turns.

"Q. Based upon your knowledge and experience with 'planes of this type and with that particular 'plane and your observation at the time this spin was being made, state whether or not you have an opinion satisfactory to yourself as to what caused this 'plane to strike the ground?

"A. Yes, sir, I have an opinion.

"Q. What is your opinion?

"A. My opinion is that Mr. Bobbitt attempted to do too many turns before he recovered."

The challenged testimony of the witness W. S. O'Neal:

"Q. Mr. O'Neal, do you have an opinion satisfactory to yourself as to how many turns in the spin could have been safely made by Mr. Bobbitt from the altitude from which he started, 1800 feet?

"A. Yes, I do.

"Q. What is your opinion?

"A. In my opinion, from the altitude that the maneuver was started, I would say that three turns were all that should have—that three turns would have been safe enough.

"Q. From your observation of this airplane crash and from your knowledge and experience have you an opinion satisfactory to yourself as to the cause of this crash?

"A. I have an opinion, yes, sir.

"Q. What is that opinion?

"A. My opinion is that the pilot of the airplane, Mr. Bobbitt, just tried to overdo it.

"Q. What do you mean by overdoing it?

"A. Well, he was trying to give the public a thrill or what you might say he was trying to give them their money's worth, as you might say."

The defendant insists that the foregoing testimony, embodying opinions as to the cause of the crash, should have been excluded as being expressive of opinions as to the very issue of fact before the jury, *i.e.*, the cause of the crash. The defendant cites and relies upon *Patrick v. Treadwell,* 222 N.C. 1, 21 S.E. 2d 818. However, the basic facts in that case are different and the decision is distinguishable from the instant case. Indeed, the law as laid down in the *Patrick case* supports the challenged rulings of the court below in the case at bar. We quote from the *Patrick case:*

"It has been frequently stated by the courts that the testimony of an expert witness should be excluded when it invades the province of the jury, or when it expresses an opinion on the very issue before the jury. . . ." (222 N.C. mid. p. 4.)

"But this rule is not inflexible, is subject to many exceptions, and is open to criticism." (222 N.C. mid. p. 4.)

". . . and it is frequently relaxed in the admission of evidence as to ultimate facts in regard to matters of science, art, or skill, as may be seen by reference to *Holder v. Lumber Co.,* 161 N.C. 177; *Ferebee v. R. R.,* 167 N.C. 290; *Barrow v. Ins. Co.,* 169 N.C. 572; *Moore v. Assurance Corp.,* 173 N.C. 532, and to many other cases." (222 N.C. top p. 5.)

Also, in *Patrick v. Treadwell, supra,* the Court recognizes the propriety of permitting experts, in the light of their professional skill, to draw inferences from facts personally observed by them, and cites in support thereof *George v. R. R.,* 215 N.C. 773, 3 S.E. 2d 286, and *McManus v. R. R.,* 174 N.C. 735, 94 S.E. 455. In the *George case* it is stated:

"It will be noted that this witness, admitted to be an expert, spoke from professional and personal examination of the intestate, and the answer, to our minds, was clearly within the domain of expert opinion."

In the instant case, the witnesses were duly qualified experts, testifying from actual observation of an airplane with which they were personally

familiar. They testified to composite facts based upon their knowledge, skill, and experience as experts from observation of the movements and actions of the airplane itself at the very time of the occurrence. The challenged testimony may not be held for error. It has the sanction of well considered authorities on the subject. Wigmore on Evidence, Third Edition, Vol. VII, Sections 1919 through 1923, p. 14 *et seq.* See also: *Watson v. Durham,* 207 N.C. 624, 178 S.E. 218; *Pyatt v. R. R.,* 199 N.C. 397, 154 S.E. 847; *Barnes v. R. R.,* 178 N.C. 264, 100 S.E. 519; and *Brewer v. Ring and Valk,* 177 N.C. 476, 99 S.E. 358.

The last answer of the witness O'Neal in which he expressed the opinion that the pilot "was trying to give the public a thrill or what you might say he was trying to give them their money's worth, as you might say," may exceed the permissive bounds of expert testimony, but upon this record it is deemed insufficient to upset the result reached below. *In re Will of Efird,* 195 N.C. 76, 141 S.E. 460.

3. *The charge of the court.*—The defendant's principal exceptions to the charge relate to the issue of contributory negligence. An analysis of the record leads us to the conclusion that the evidence offered below was insufficient to support the issue of contributory negligence. It follows, therefore, that any error which may have been committed in the charge on the issue of contributory negligence may be treated as harmless.

The pertinent allegations of contributory negligence set out in the defendant's further defense are as follows:

"1. That if plaintiff's intestate was killed as alleged in the complaint, which is again denied, said intestate in entering and remaining in the airplane which was to be operated by H. L. Bobbitt in the performance of a flying operation which was not a normal operation failed to exercise ordinary care for his safety.

"2. That if the 'plane referred to in the complaint was being operated in a negligent manner, which is again denied, this was fully known to plaintiff's intestate and was acquiesced in by him and by such acquiescence he contributed to his death.

"3. That if the 'plane referred to in the complaint was in a negligent and bad state of repair, as alleged in the complaint, which is again denied, plaintiff's intestate knew or, in the exercise of ordinary care, could have ascertained the condition of said 'plane and in entering into said 'plane for the purpose of flight and flying therein, plaintiff's intestate contributed to his death. (This theory of contributory negligence was neither developed at the trial nor urged as being relevant on appeal.)

"4. The contributory negligence of plaintiff's intestate is pleaded in bar of plaintiff's right to recover in this action."

Contributory negligence must be pleaded and proved by the defendant. G.S. 1-139. *Moore v. Iron Works,* 183 N.C. 438, 111 S.E. 776; *Ramsey*

*v. Furniture Co.,* 209 N.C. 165, 183 S.E. 536. To be sufficient, a plea of contributory negligence must aver a state of facts to which the law attaches negligence as a conclusion. *Watson v. Farmer,* 141 N.C. 452, 54 S.E. 419; *Cogdell v. Railroad Co.,* 132 N.C. 852, p. 855, 44 S.E. 618. One relying on contributory negligence must prove facts from which the inference of contributory negligence may be drawn by men of ordinary reason. *Boney v. R. R.,* 155 N.C. 95, 71 S.E. 87; *Farris v. R. R.,* 151 N.C. 483, bot. p. 489, 66 S.E. 457. Evidence which raises a mere conjecture is insufficient for the jury. *White v. R. R.,* 121 N.C. 484, 27 S.E. 1002.

The gist of paragraph one of the further defense is that the intestate was contributorily negligent for participating in an airplane maneuver which "was not a normal operation." There is no specific allegation as to how and wherein the maneuver was dangerous. Indeed, there is no allegation that the maneuver was in fact dangerous. But, conceding without deciding, that by implication the allegations may be broad enough to support a showing that the fatal maneuver was inherently dangerous, as contended by the defendant, nevertheless the record discloses no evidence to that effect. All the evidence tends to show that, as stated by the witness W. S. O'Neal, "The spin is a perfectly safe maneuver for an airplane when properly done." And as the witness R. H. Edwards, Jr., put it, "My opinion is that in a proper aircraft with a properly trained pilot at a proper altitude it is a safe maneuver because I have done it hundreds of times." There is no evidence to the contrary. And all the evidence tends to show that the pilot Bobbitt was a properly trained pilot and that the airplane was in good mechanical condition and of suitable design for this particular operation. We attach no probative force of substance to the evidence, stressed by the defendant, tending to show that the intestate stated to a friend at the time he entered the 'plane : "Take my automobile key in case I do not come back."

The gist of the defendant's second allegation of contributory negligence is simply that if the pilot operated the airplane in a negligent manner, the intestate was contributorily negligent in that he acquiesced in such negligent operation. Here, again, the allegation is general, with no specific allegations as to how or wherein the intestate in the exercise of due care might have averted the consequences of the pilot's negligence. There is no allegation that in the emergency he might or should have taken over control of the airplane. But be that as it may, should we concede, without deciding, that the general allegation is sufficient to support the theory urged by the defendant to the effect that the intestate, himself being a pilot of some training and experience, in the exercise of due care should have so taken control of the airplane and pulled it out of the spin and into normal flight before the crash occurred,—even so, the record contains no evidence to support any such finding by the jury.

True, the defendant on cross-examination of some of the witnesses showed that the airplane was a pilot-training type of airplane with tandem seating arrangement and dual controls available to the occupant of the rear seat. However, all of the evidence tends to show that any attempt on the part of the intestate to have wrested control of the 'plane from the pilot would not have been in keeping with approved and accepted flying practices. On this question the evidence below tends to show: that under Civil Aeronautics regulations, "The pilot in command of an aircraft shall be directly responsible for its safe operation." And the witness O'Neal testified: "It is not customary or proper for a passenger in a 'plane to take over the controls from the pilot in command"; and the witness Edwards testified in effect that the person in the rear seat would have to overcome the strength of the other person on the controls and that in his opinion "it is not safe for a person to interfere with the pilot in charge of a 'plane" in making a spin as in the instant case; and the witness Edwards further testified that ordinarily "A passenger is not permitted to interfere with the controls when a maneuver is being made by the pilot in command of the ship."

From the foregoing, it follows that on the issue of contributory negligence the trial court might well have directed a verdict in favor of the plaintiff. This being so, any errors that may have been committed on the trial of this issue are harmless. See *Gray v. Power Co.,* 231 N.C. 423, 57 S.E. 2d 316; *White v. R. R., supra* (121 N.C. 484, 27 S.E. 1002). Accordingly we refrain from reviewing this group of exceptions.

The defendant's remaining exceptions have been examined. They are without substantial merit. Therefore in the trial below, we find

No error.

BARNHILL, J., concurs in result.