### STATE v. JAMES POWELL, SR.

(Filed 4 November, 1953.)

**1. Criminal Law § 31a—**

A medical expert testified as to the bullet wounds in, and powder burns on, the hand and head of deceased. *Held:* The medical expert is competent to testify from his examination as to the position of deceased's hand when the fatal shot was fired.

**2. Same—**

The rule that an expert witness may not express an opinion on the very issue before the jury is subject to exceptions permitting the admission of evidence as to ultimate facts in regard to matters of science, art or skill.

**3. Homicide § 27h—**

Where there is any substantial evidence of defendant's guilt of murder in the second degree, the trial court correctly submits the question to the jury.

**4. Homicide § 25—**

The State's evidence tended to show that defendant got up from his bed, went to another room and procured a pistol which he put under his pillow

to scare his wife and make her stop arguing, that as she continued to argue defendant raised up in bed and pointed the pistol at her, and that she grabbed it and the pistol went off inflicting fatal injury. *Held:* The evidence is sufficient to be submitted to the jury on the question of defendant's guilt of murder in the second degree.

**5. Homicide § 16—**

A pistol is a deadly weapon *per se.*

**6. Same—**

An intentional killing of a human being with a deadly weapon implies malice, and, nothing else appearing, constitutes murder in the second degree, casting the burden upon defendant to show to the satisfaction of the jury facts and circumstances sufficient to reduce the charge to manslaughter or excuse it.

APPEAL by defendant from *Moore, J.,* February Term, 1953. CATAWBA. No error.

The bill of indictment charged the defendant with the murder of his wife, Bessie Rector Powell. Before the trial the Solicitor announced that he would not ask for a verdict of guilty of murder in the first degree, but would ask for a verdict of guilty of murder in the second degree or manslaughter, as the evidence might warrant. The defendant pleaded Not Guilty. The jury's verdict was guilty of murder in the second degree.

The State's evidence tended to show the following facts. As the result of a call the sheriff of the county went to the defendant's home 7 January 1953, arriving there about 4:00 a.m. It was a two-story house. The bedroom of the defendant and his wife was on the lefthand side of the house as you enter. The sheriff went into this bedroom, and found there two deputy sheriffs, James Powell, Jr., a son of the defendant by a former marriage, William Rector, brother of Bessie Rector Powell, and the defendant, who was asleep in the bed in which his wife had been shot. The defendant's wife had been carried to the hospital, where she died about 9:00 a.m.

The defendant's son, James, there in his father's presence made this statement. He and William Rector were asleep upstairs. He was awakened by a shot. Shortly thereafter his father called, saying come down, Bessie had been hurt. He awakened Rector, and they went downstairs. He saw Bessie Rector Powell lying in bed, a lot of blood on her and on the bed, and his father standing beside the bed trying to wipe the blood away. He also tried to wash the blood away, and stop the bleeding. Being unsuccessful, he went to a deputy sheriff's home. An ambulance was called, and she was carried to a hospital. When he came downstairs his father's pistol was lying on the bed beside Bessie. His father took it up, and put it on a chest of drawers in the room, where he showed it to the sheriff.

The sheriff then talked to the defendant. In the sheriff's opinion he did not appear under the influence of intoxicants, but the sheriff smelt a faint odor. The defendant talked freely about all of it. This is a summary of what he there told the sheriff. Early that evening he and his wife went to Newton, and at a whiskey store bought a fifth of Old Stag Whiskey. They went to a friend's home, and had a few drinks. He and his wife returned home about 10 :00 p.m. About one inch of whiskey was left in the bottle. About 10 :30 p.m. they went to bed. His wife was in a very argumentative mood and drunk. He was sleepy, and could not get her to stop arguing. Later on that night his wife was still making a noise, and wouldn't go to sleep. He got up, turned on the light, went into the next room, unlocked a big tool chest where he kept a rifle, shotgun and pistol, and took his pistol out, and locked the chest. He then went back into the bedroom, where the light was on, and Bessie in bed. He thought she saw the pistol. He was trying to scare her and get her to hush and go to sleep. He put the pistol under his pillow, turned off the light, and got in bed. His wife continued to argue. He raised up in bed with the pistol in his hand. He wasn't sure whether she grabbed at the pistol or grabbed at the barrel; he had the butt of the pistol in his hand, his finger on the trigger, the pistol pointed at his wife, when it fired. His wife was lying in bed flat on her back. He said his wife's head was lying on a pillow, and the pool of blood on the pillow came from her head wound. Lower in the bed, where she apparently slipped down, was another pool of blood. The best he could recall Bessie's injury occurred about 2 :30 a.m.

The body of Bessie Rector Powell was examined by two physicians— one of whom performed an autopsy. Her death resulted from a penetrating wound of the skull with a laceration and tearing of the brain and rupture of the superior blood sinus that caused her to bleed to death. At the autopsy a soft lead bullet, extremely distorted, was removed from her skull. There was a bullet wound through the ring finger of her right hand—the exit of the bullet was apparently on the back of the hand. There were powder burns on the inside of her hand and on the surface of her forehead.

This is a brief summary of the defendant's evidence. He and his wife were on good terms, and had never had any trouble. It was his custom to keep his pistol under his pillow at night. That night he and his wife had no argument, except she wanted more liquor. After he had been in bed 15 or 20 minutes, he got up, and put his pistol under his pillow. After midnight he was awakened by someone pulling at the pistol. He raised up, Bessie was getting hold of the pistol, he grabbed, and got hold of it, and then it fired.

From judgment imposed the defendant appealed.

*Attorney-General McMullan, Assistant Attorney General Love, and Gerald F. White, Member of Staff, for the State.*

*Louis A. Whitener for defendant, appellant.*

PARKER, J. Defendant's Assignment of Error No. One is to the admission over his objection of the following testimony of Dr. J. C. Reece, who performed an autopsy on the body of Bessie Rector Powell, and who was admitted by the defendant to be an expert witness as a physician and pathologist. Dr. Reece was asked these questions. Q. You have described the wound on the finger of the deceased woman. Based upon your examination of her and your training and experience in matters of this sort, have you an opinion satisfactory to yourself where her hand was when the fatal bullet shot was fired? Objection—Overruled—Exception. A. I do. Q. Would you tell the court and jury what that opinion is? A. I think the hand was somewhere in front of the face in this particular area (indicating). Q. Would you say, Doctor, that it was turned—in other words like that, to her face? (indicating). A. Yes.

This witness spoke from a professional and personal examination of the body of Bessie Rector Powell, and the answers, to our minds, were clearly within the domain of expert opinion. The witness had testified in minute detail as to the penetration of the bullet through the ring finger of the right hand into the skull and brain of Bessie Rector Powell, and also the powder burns on her hand and forehead. His opinion required expert skill or knowledge in the medical or pathologic field about which a person of ordinary experience would not be capable of satisfactory conclusions, unaided by expert information from one learned in the medical profession. The questions and answers are approved and upheld, we think, in *S. v. Jones,* 68 N.C. 443 (opinion of doctor who saw deceased as to his posture and position when shot); *S. v. Fox,* 197 N.C. 478, 149 S.E. 735 (opinion of doctor that deceased was lying down when he received the fatal wound); *S. v. Stanley,* 227 N.C. 650, 44 S.E. 2d 196 (physician testified that deceased was in a prone position when fatal injuries inflicted); *McManus v. R. R.,* 174 N.C. 735, 94 S.E. 455 (physician testified the intestate was lying down at time of injury); *George v. R. R.,* 215 N.C. 773, 3 S.E. 2d 286 (similar opinion testimony as in *McManus* case).

It has been frequently stated that the testimony of an expert witness should be excluded when it expresses an opinion on the very issue before the jury, but this rule is not inflexible. It is frequently relaxed in the admission of evidence as to ultimate facts in regard to matters of science, art or skill, *Bruce v. Flying Service,* 234 N.C. 79, 66 S.E. 2d 312; where cases are cited.

We have examined the cases relied upon by the defendant, and they have different facts.

Defendant's Assignment of Error No. One is overruled.

Defendant's Assignments of Errors Nos. Two and Three are to the refusal of the trial court to nonsuit the State as to murder in the second degree made at the close of the State's evidence, and renewed at the close of all the evidence. The defendant contended the court should have submitted the case to the jury on manslaughter alone.

This presents the question was there any substantial evidence to carry the State's case to the jury that the defendant was guilty of murder in the second degree. If so, it is a matter for the jury. *S. v. Ewing,* 227 N.C. 535, 42 S.E. 2d 676; *S. v. Bright,* 237 N.C. 475, 75 S.E. 2d 407.

The evidence for the State discloses these facts. His wife was drunk and in a very argumentative mood; they went to bed about 10:30 p.m.; he was sleepy and tried to get her to stop arguing, which she would not. Later on she was still making a noise, and wouldn't go to sleep. The defendant got out of bed, turned on the light and went into another room, got his pistol, and put it under his pillow turning off the light, and got back in bed. He got the pistol to scare her, to get her to hush, and go to sleep. She continued to argue. He raised up in bed, had the butt of the pistol in his hand, his finger on the trigger, and the pistol pointed at his wife. He told the sheriff he wasn't sure whether she grabbed at the pistol or the barrel. His wife was lying on the bed on her back. Under those conditions the pistol fired, and a bullet penetrated his wife's ring finger of her right hand, and entered her skull causing her death. The opinion of Dr. Reece, an expert witness, who performed the autopsy, was that his wife's right hand was in front of her face when the pistol fired.

Considering the evidence in the light most favorable to the State, and giving to it the benefit of every intendment upon the evidence and every reasonable inference to be drawn therefrom, *S. v. Smith,* 237 N.C. 1, 74 S.E. 2d 291, we are of the opinion that the trial judge was correct in submitting to the jury the question of an intentional killing of Bessie Rector Powell with a pistol. A pistol is a deadly weapon *per se.* *S. v. Beal,* 170 N.C. 764, 87 S.E. 416.

The law is well established in this State that the intentional killing of a human being with a deadly weapon implies malice, and, if nothing else appears, constitutes murder in the second degree. When this is established by proof, the law casts upon the defendant the burden of showing to the satisfaction of the jury facts and circumstances sufficient to reduce the homicide to manslaughter, or to excuse it. *S. v. Burrage,* 223 N.C. 129, 25 S.E. 2d 393; *S. v. Staton,* 227 N.C. 409, 42 S.E. 2d 401; *S. v. Lamm,* 232 N.C. 402, 61 S.E. 2d 188.

The defendant's Assignments of Errors Nos. Two and Three are without merit.

The remaining two assignments of errors are to the refusal of the court to set the verdict aside as contrary to the evidence, and to the signing of the judgment. They are overruled. The charge of the court is not brought forward.

The facts of the case are gruesome. The defendant, who was not under the influence of intoxicants, after the foul and midnight murder of his wife, was found by the sheriff at 4:00 a.m. asleep in the bed drenched with her blood. It is difficult to imagine more heartless indifference.

In the trial below we find

No error.