TENNESSEE-CAROLINA TRANSPORTATION, INC. v. STRICK CORPORATION

No. 95

(Filed 11 December 1974)

1. Courts § 21— contract made in different state — what law governs

Sales contract executed in Pennsylvania but performed in Illinois was governed by the substantive law of Pennsylvania, as determined by the Supreme Court in an earlier appeal of the case.

2. Appeal and Error § 68— effect of Supreme Court decision on subsequent proceedings

The decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal.

3. Sales § 14; Uniform Commercial Code § 20— breach of warranty — evidence of value six years after sale — remoteness

Where the measure of damages in this action for breach of warranty of fitness of trailers was the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, evidence as to the trade-in value of the trailers some six years after the delivery and acceptance was too remote in time to be competent and the trial court properly excluded it.

4. **Sales § 14; Uniform Commercial Code § 20— breach of warranty — value of trailers — depreciation schedule properly excluded**

Depreciated value is an arbitrary valuation and does not necessarily reflect fair market value, and depreciation is a means of setting aside a reserve or sinking fund for replacement, and, further, a tax deduction for business expenses; therefore, depreciation schedules and depreciated values did not fairly point to the value of trailers at the time they were delivered by defendant and accepted by plaintiff, and such evidence was properly excluded in an action for breach of warranty of fitness of the trailers.

5. **Evidence § 19— condition of property — condition at another time**

Whether evidence of condition at one time is competent as evidence of condition at another time depends altogether on the nature of the subject matter, the length of time intervening, and the extent of the showing, if any, on the question of whether or not the condition had changed in the meantime.

6. **Sales § 14; Uniform Commercial Code § 20— warranty of fitness of trailers — hardness tests — exclusion improper**

Trial court in an action for breach of warranty of fitness of trailers erred in excluding evidence of hardness tests made on the top rails of the trailers some six years after their manufacture, since the hardness of metal is such a constant, immutable characteristic that the six-year time lapse was greatly diminished in significance; furthermore, plaintiff was allowed to introduce evidence of hardness tests and defendant should have been allowed to introduce refuting evidence.

7. **Sales § 14; Uniform Commercial Code § 20— breach of warranty — instruction as to cause of malfunction**

In an action for breach of warranty of fitness of trailers, the trial court's instruction that, "When a semi-trailer malfunctions, it obviously lacks fitness regardless of the cause of the malfunction," was erroneous, since the charge should have limited the malfunction necessary to constitute a breach to something done or not done by defendant in manufacturing the trailers.

APPEAL by defendant from *Ervin, J.,* at the 21 January 1974 Session of MECKLENBURG Superior Court, certified pursuant to G.S. 7A-31(a) for initial appellate review by the Supreme Court.

This case was before this Court at the Spring Term 1973, and a new trial was ordered in a decision reported in *Transportation, Inc. v. Strick Corp.,* 283 N.C. 423, 196 S.E. 2d 711 (1973).

Plaintiff, a Tennessee corporation, is a general commodities carrier licensed by the Interstate Commerce Commission to operate in eight states, including North Carolina. Defendant is a trailer manufacturer incorporated in Pennsylvania. On 10 July

1967 plaintiff placed a purchase order with defendant for 150 42-foot trailers at $5,695 per trailer. The trailers were delivered f.o.b. defendant's Chicago factory during August, September, and October, 1967.

In the following six months, two or three of the trailers sagged downward in the middle and bulged out at the sides. Upon notice, defendant at its expense repaired these trailers. Defendant also at its expense modified all the trailers by, placing a reinforced aluminum rail approximately 20 feet long about midway along the top inside of each trailer. This repair work was completed early in 1968.

No further problems with the trailers were encountered until 1970. Plaintiff offered evidence that from May 1970 to June 1973 about nine trailers failed. Defendant denied that any warranty covered these trailers, or that these failures were caused by any defects in their construction.

In remanding this case for a new trial on the former appeal, we held:

"That defendant impliedy warranted that the 150 trailers were fit for the particular purpose for which the plaintiff purchased them has been established by the verdict of the jury in the trial below. The verdict on that issue stands. On retrial appropriate issues shall be submitted to the jury as to whether and to what extent defendant breached the implied warranty of fitness and what amount, if any, plaintiff is entitled to recover for breach of warranty. The question of interest as 'damages for delay in compensation' shall be left to the jury's discretion under appropriate instructions."

On retrial, issues were submitted to and answered by the jury as follows:

"1. Did the Defendant breach its implied warranty to the Plaintiff, as alleged in the Complaint?

ANSWER: Yes

"2. If so, what damages, if any, is the Plaintiff entitled to recover from the Defendant?

ANSWER: $300,750.

"3. In what amount, if any, is the defendant indebted to the plaintiff as damages for delay in compensation?

ANSWER: $ NONE"

In addition, the court submitted a special issue as follows:

"We, the Jury, find that Strick breached its implied Warranty of fitness to Tennessee-Carolina Transportation, Inc., as to _____ of the 150 trailers involved in this action."

The jury was instructed to place in the blank the number of trailers as to which the warranty was breached. The jury placed "150" in the blank.

From judgment entered on the issues, defendant appealed.

Other facts pertinent to decision are set out in the opinion.

*Welling & Miller by George J. Miller and Charles M. Welling; Kennedy, Covington, Lobdell & Hickman by Hugh L. Lobdell for defendant appellant.*

*Wallace S. Osborne; Waggoner, Hasty & Kratt by William J. Waggoner for plaintiff appellee.*

MOORE, Justice.

[1] The sales contract here involved was executed in Pennsylvania but was to be performed by delivery of the trailers in Illinois. Defendant now contends that the substantive law of the place of performance (Illinois) controls the question of breach of implied warranty and, if there was a breach, the measure of damages.

In the former opinion in this case we stated:

". . . [T]he parties have not contended that any law other than the law of Pennsylvania shall govern. We proceed accordingly, noting only that the contract of sale did not attempt to choose the applicable law, but each of the six security agreements provided: 'This instrument . . . is made and accepted in Pennsylvania, and shall be governed and interpreted according to the laws of Pennsylvania.'

"Therefore, the substantive issues in the case before us are to be resolved under the law of Pennsylvania, of which we are required to take judicial notice by G.S. 8-4.

With respect to procedural matters, the law of North Carolina governs [Citation omitted]." *Transportation, Inc. v. Strick Corp.*, 283 N.C. 423, 431, 196 S.E. 2d 711, 716 (1973).

[2] The decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal. As stated by Parker, Justice (later Chief Justice), dissenting in part in *Collins v. Simms,* 257 N.C. 1, 11, 125 S.E. 2d 298, 305 (1962):

> "As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal. *Hayes v. Wilmington,* 243 N.C. 525, 91 S.E. 2d 673; *Bruce v. O'Neal Flying Service,* 234 N.C. 79, 66 S.E. 2d 312; *Pinnix v. Griffin,* 221 N.C. 348, 20 S.E. 2d 366, 141 A.L.R. 1164; *Robinson v. McAlhaney,* 216 N.C. 674, 6 S.E. 2d 517; Strong's N. C. Index, Vol. 1, Appeal and Error, sec. 60, where many of our cases are cited; 3 Am. Jur., Appeal and Error, sec. 985."

This contention is without merit.

Defendant next contends that the court erred in excluding evidence offered by defendant to show the value of the trailers as entered on plaintiff's books, the depreciation taken by plaintiff, and the price obtained by plaintiff when the trailers were resold after having been used for almost six years.

Questions of the admission and exclusion of evidence are generally procedural and governed by the *lex fori. Transportation, Inc. v. Strick Corp., supra.*

[3] The measure of damages in this case for breach of warranty is " 'the difference *at the time and place of acceptance* between the value of the goods accepted and the value they would have had if they had been as warranted. . . .' Pa. Stat. Ann. tit. 12A, § 2-714(2) (1970). (Emphasis added.)" *Id.* at 283 N.C. 436, 196 S.E. 2d 720. "[T]he *proper* time for a determination of the value of the trailers under Pa. Stat. Ann. tit. 12A,

§ 2-714(2) was the period from 30 August 1967 through 31 October 1967, the time during which delivery and acceptance of the trailers occurred." *Id.*, at 283 N.C. 437, 196 S.E. 2d 720. In the former decision we held that the opinions of two witnesses—opinions of the value of the trailers more than two and one half years and five years after the time of acceptance—were improperly admitted. We stated:

> "Where the value of personal property at a given point in time is in issue, evidence of its value within a reasonable time before or after such point is competent as bearing upon its value at the time in issue. *Newsome v. Cothrane,* 185 N.C. 161, 116 S.E. 415 (1923). Evidence of the property's value beyond a reasonable time before or after that point lacks probative force and is incompetent. *Highway Comm'n v. Hartley,* 218 N.C. 438, 11 S.E. 2d 314 (1940) (real property). See 31A C.J.S. Evidence § 183(5) (1964). . . ." *Id.,* at 283 N.C. 437, 196 S.E. 2d 720.

Applying this rule, we hold that the trade-in value some six years after the delivery and acceptance in 1967 was too remote in time to be competent and was properly excluded.

[4] Depreciation schedules are maintained for two primary reasons: first, to create a depreciation reserve which, coupled with the salvage value of the equipment, will enable the owner to replace the equipment when no longer useful due to deterioration from age, use, and improvements due to better methods; second, to enable the owner to make a reasonable annual deduction from gross income to offset loss in value and thereby reduce taxable income. Various methods of depreciating items are permissible, such as straight line, 200% declining balance, and sum of the years-digits. Treas. Reg. § 1.167(b) (1974). The plaintiff in this case used a straight-line method over a six-year period. Depreciated value is an arbitrary valuation and does not necessarily reflect fair market value. Depreciation is a means of setting aside a reserve or sinking fund for replacement and, further, a tax deduction for business expenses. The depreciation schedules and the depreciated values do not fairly point to the value of the trailers in 1967—the time of delivery and acceptance. Hence, these were properly excluded.

Plaintiff introduced evidence that tended to show the trailers had soft faulty top rails that gave way and thereby caused the trailers to fail; that, according to Strick's specifications, the

rails should have a 78 to 84 hardness, and that one trailer tested by a Barcol Impressionor had a hardness factor of 64 to 68. To rebut this evidence, defendant offered the testimony of James Nelson Johnson, found by the court to be an expert in the field of trailer repair and maintenance. In the absence of the jury, this witness testified that on 22 January 1974 he examined five of the trailers in question that had been traded in by the plaintiff to Fruehauf Corporation; that he ran a test on the top rails of these trailers with the Barcol Impressionor; that these top rails were the original rails installed when the trailers were built in 1967; and that these tests disclosed that the top rails on these five trailers had a hardness factor varying from 78 to 90. On objection by the plaintiff, the court stated, "I am not going to permit him to give the foregoing testimony in the presence of the jury," and the evidence was excluded.

[5]  Whether evidence of condition at one time is competent as evidence of condition at another time "depends altogether on the nature of the subject matter, the length of time intervening, and the extent of the showing, if any, on the question of whether or not the condition had changed in the meantime." 1 Stansbury's North Carolina Evidence § 90 (Brandis Rev. 1973). A good statement of the law of evidence of subsequent conditions is found at 29 Am. Jur. 2d, Evidence § 300 (1967):

"It has sometimes been held, in view of the general principle of inadmissibility of evidence of similar or comparable facts having no probative value, and probably also because of the circumstances of the particular case, that evidence that a condition existed at a specific time is not admissible for the purpose of showing a condition or state of affairs at some other time. However, in view of the inference or presumption of the continuance of a condition or state of facts once established by proof, it is more generally held that when the condition of premises or of an appliance at a particular time is in issue, evidence of the condition of such premises or appliance at a time prior or subsequent to the time in question is relevant and admissible, provided it relates directly to the issue in question and is not too remote in point of time. So far as such interval of time is concerned, the nature of the thing or condition and the particular circumstances of the case are controlling, and therefore no fixed rule can be laid down other than that the evidence must relate closely enough to the time in ques-

tion to make it apparent that the condition has not been changed *or it must appear that the condition is one which is so constant or permanent that lapse of time will not make a material difference.*" (Emphasis added.)

The proper inquiry in each instance is the degree of likelihood that the condition has remained unchanged. 1 Jones on Evidence § 4.8 (6th ed. 1972) ; 1 Stansbury's North Carolina Evidence § 90 (Brandis Rev. 1973) ; *Jenkins v. Hawthorne*, 269 N.C. 672, 153 S.E. 2d 339 (1967) ; *Shaw v. Handle Co.*, 188 N.C. 222, 124 S.E. 325 (1924) ; *Blevins v. Cotton Mills*, 150 N.C. 493, 64 S.E. 428 (1909).

[6]   In the present case defendant sought to introduce hardness tests made on the top rails of these trailers some six years after their manufacture. While this is a significant lapse of time, we think the hardness of metal is such a constant, immutable characteristic that such a lapse of time is greatly diminished in significance, and that the tests were improperly excluded. Plaintiff had introduced evidence of hardness tests showing readings of 64 to 68, well below the desired readings of 78 to 84. Plaintiff's evidence tended to show an essential element of its case; *i.e.*, that the trailers were defective. Defendant's evidence would have tended to refute this. "Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially." 3 Strong, N. C. Index 2d, Evidence § 20, p. 629 (1967), and cases therein cited. The exclusion of this evidence was prejudicial error.

[7]   Defendant assigns as error the following instruction to the jury:

"The Court charges you that the law is that proof of a specific defect in construction or design causing a mechanical malfunction is not an essential element in establishing breach of warranty. When a semi-trailer malfunctions, it obviously lacks fitness *regardless of the cause of the malfunction.* Under the theory of warranty the sin is the lack of fitness [and] is evidenced by the malfunction itself." (Emphasis added.)

In this portion of the charge the court did not limit the malfunction necessary to constitute a breach to something done or not done by defendant in manufacturing the trailers. To the

contrary, the instruction was so broad that the jury could find that even though the malfunction was caused by accident in operating or loading the trailers independent of any acts or omissions of defendant, this would still constitute a breach of warranty by defendant. The malfunction necessary to constitute a breach should have been limited to one caused by something defendant did or did not do in manufacturing the trailer.

As stated in 63 Am. Jur. 2d, Products Liability § 9 (1972), "[T]he necessity of proving defectiveness of the product applies no matter what theory governs the particular action: negligence, breach of express or implied sales warranty, strict liability, or any other theory." Comment 13 to Pa. Stat. Ann., tit. 12A § 2-314 (1970), states: "In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained. In such an action an affirmative showing by the seller that the loss resulted from some action or event following his own delivery of the goods can operate as a defense." *See also,* White and Summers, Uniform Commercial Code 272 (1972), wherein it is stated: " . . . Once the plaintiff has proven his injury . . . [f]irst, he must prove that the defendant made a warranty, express or implied, under 2-313, 2-314, or 2-315. Second, he must prove that the goods did not comply with the warranty, that is, that they were defective at the time of the sale. Third, he must prove that his injury was caused, 'proximately' and in fact, by the defective nature of the goods (and not, for example, by his careless use . . .). Fourth, he must prove his damages . . . . "

The Pennsylvania Court recognized this in *MacDougall v. Ford Motor Company,* 214 Pa. Super. 384, 257 A. 2d 676 (1969), when it held that "the occurrence of a malfunction of machinery *in the absence of abnormal use and reasonable secondary causes . . . is evidence of* lack of fitness for warranty liability." (Emphasis added.)

Pennsylvania law does not require proof of a *specific* defect, but there still must be proof of general defective condition existing at the time of sale. *See Greco v. Bucciconi Engineering Co.,* 283 F. Supp. 978 (W.D. Pa. 1967), aff'd 407 F. 2d 87 (3d Cir. 1969) ; *Jarnot v. Ford Motor Co.,* 191 Pa. Super. 422, 156 A. 2d 568 (1959) ; *Frigidinners, Inc. v. Branchtown Gun Club,* 176 Pa. Super. 643, 109 A. 2d 202 (1954).

Defendant's evidence tended to show that after the modification of the trailers by the installation of the reinforced rail, no further trouble was experienced with the trailers for some two and one-half years; that thereafter the nine failures which plaintiff contends occurred between May 1970 and June 1973 were caused by reason of the fact that many of the side posts of the trailers were either totally destroyed or severely damaged by forklifts, hand trucks, loading crates and general freight cargo; and that when these posts were knocked out or severely damaged the structural integrity of the unit was destroyed causing failure in either the top or bottom rail, or both. The quoted portion of the charge erroneously deprived defendant of the benefit of this explanation as to why those trailers failed.

We do not deem it necessary to discuss defendant's other assignments of error since the questions there presented may not arise at another trial.

For the reasons stated, this case is remanded to the Superior Court of Mecklenburg County for a new trial in accordance with this opinion.

New trial.