DIETZ, Judge.
 

 *79
 
 Carlos Pachas was a Medicaid recipient. In 2016, he challenged the deductible applied to his Medicaid coverage. After losing throughout the administrative process, Pachas ultimately prevailed on judicial review in the trial court. The court held that the applicable Medicaid statute required the State to use the federal poverty level for a family, not an individual, to calculate Pachas's income limit.
 

 Later, Pachas qualified for an alternative Medicaid program subject to at least some different rules than traditional Medicaid. After the State again imposed a deductible based on the federal poverty level for individuals, Pachas skipped the administrative review process and returned directly to the trial court with a motion to enforce the court's previous order and petition for writ of mandamus. The trial court dismissed the motion for lack of jurisdiction.
 

 As explained below, we affirm. Although a trial court, sitting as an appellate court to review an agency decision, has jurisdiction to enforce an existing order, it lacks jurisdiction to apply a previous order to new facts and legal arguments not at issue in the previous ruling. Here, the new Medicaid program in which Pachas enrolled permits the State to request, and the federal government to grant, waivers from various Medicaid provisions. The State contends that the federal government waived the income limit rules for this alternative Medicaid program. This argument involves questions of law and fact not addressed in the first judicial review proceeding, which concerned standard Medicaid coverage.
 

 Our holding today does not mean we agree with the State on the underlying Medicaid issue. We hold only that Pachas cannot bypass the agency review process and take this new issue directly to the trial court. Accordingly, we affirm the trial court's dismissal of Pachas's motion and petition for lack of jurisdiction.
 

 Facts and Procedural History
 

 In 2014, Petitioner Carlos Pachas began receiving Medicaid coverage after a stroke and a brain tumor left him confined to a
 
 *138
 
 wheelchair and in need of nursing care. Pachas was the primary provider for his wife, his two minor children, and his wife's elderly parents.
 
 *80
 
 In early 2015, Pachas began receiving Social Security disability benefits. The Mecklenburg County Department of Social Services determined that, based on his Social Security disability payment of $1,369 per month, Pachas's income was above the federal poverty level and thus required him to pay a deductible on his Medicaid benefits. DSS informed Pachas that it would not provide further Medicaid coverage until Pachas paid a 6-month deductible of $6,642.
 

 DSS calculated this deductible based on the federal poverty level for an individual, rather than the poverty level for a family. Had DSS applied the federal poverty level for a family, Pachas would have been eligible for Medicaid benefits without having to pay a deductible.
 

 Pachas appealed DSS's decision through the administrative process but did not prevail. He then petitioned for judicial review in superior court. Pachas argued that the applicable federal statute, 42 U.S.C. § 1396a(m), required the agency to determine his Medicaid eligibility based on the federal poverty level for a "family of the size involved." Because Pachas was the primary provider for his wife, children, and elderly in-laws, he contended that the agency should have used the federal poverty level for a family of either four or six people.
 

 Pachas prevailed in superior court. The court reversed the agency decision and ordered the agency to reinstate Pachas's Medicaid benefits. The court held that the agency improperly applied the income limit because "[t]he plain language of the controlling federal statutory provision, 42 U.S.C. § 1396a(m), states that the applicable Medicaid income limit ... must be based on a 'family of the size involved.' "
 

 In February 2017, Pachas left the nursing facility that had been caring for him and returned home under a special Medicaid program known as the Community Alternative Program for Disabled Adults, or CAP/DA. The CAP/DA program offers the State the option of providing Medicaid coverage to adults who wish to receive support services at their own homes, rather than in a nursing home.
 

 The State has discretion to define the scope of its CAP/DA program by requesting a waiver of various Medicaid provisions from the federal government.
 
 See
 
 42 U.S.C. § 1396n(c). The State contends that it requested, and received, a waiver from the requirement that it calculate CAP/DA income limits using a "family of the size involved" under 42 U.S.C. § 1396a(m).
 

 Based on this purported waiver, when Pachas enrolled in the CAP/DA program and began receiving in-home support services, the State
 
 *81
 
 calculated his income limit for CAP/DA coverage using the individual federal poverty level, not the family poverty level. As a result, the State required him to pay a deductible before receiving CAP/DA coverage.
 

 The trial court, in its initial order on judicial review, did not address the CAP/DA program or the factual and legal issues concerning the State's request for a waiver of various Medicaid provisions through CAP/DA. Indeed, the CAP/DA program was not even at issue in the initial administrative challenge because, at the time, Pachas was receiving only standard Medicaid coverage. As a result, the administrative record from the initial proceeding does not include any documents addressing either CAP/DA coverage generally or whether the federal government approved the State's purported request to waive the requirements of 42 U.S.C. § 1396a(m).
 

 After learning that the State would require a deductible for CAP/DA coverage, Pachas bypassed the administrative review process and filed in superior court a motion to enforce the court's previous order and a petition for a writ of mandamus. Following a hearing, the trial court dismissed the motion and petition for lack of jurisdiction.
 

 The trial court ruled that its initial order "does not apply to Petitioner's Medicaid eligibility under the CAP/DA waiver" because the CAP/DA program is "governed by [a] separate federal statute, 42 U.S.C. § 1396n(c)"
 

 *139
 
 which permits the federal government "to waive the State Plan requirements for income and resource rules ... that the Court considered in the March 17, 2016 Order." The trial court therefore held that "Petitioner must resort to the administrative process governed by N.C.G.S. § 108A-79 to appeal" the State's decision to require a deductible for CAP/DA coverage. Pachas appealed the trial court's ruling to this Court.
 

 Sadly, Pachas passed away during this litigation. His wife, Julissa Pachas, was substituted as petitioner in her capacity as administrator of Pachas's estate.
 

 Analysis
 

 Pachas challenges the trial court's dismissal of his motion to enforce the court's previous order, and the corresponding petition for a writ of mandamus. We begin our analysis by discussing the trial court's authority to consider these filings.
 

 Ordinarily, trial courts lack jurisdiction to directly review a decision by a county department of social services with respect to Medicaid coverage. The General Assembly created an administrative review process for these claims, and courts have jurisdiction to hear these disputes only when they arrive through a petition for judicial review after exhaustion of this administrative review.
 
 See
 
 N.C. Gen. Stat. §§ 108A-79, 150B-43.
 

 But as in other legal proceedings, trial courts reviewing administrative decisions have jurisdiction to enforce their own orders.
 
 See
 
 N.C. R. Civ. P. 70 ;
 
 Bryan v. BellSouth Commc'ns, Inc.
 
 ,
 
 492 F.3d 231
 
 , 236 (4th Cir. 2007). Thus, when a trial court on judicial review orders an agency to take action, the court retains jurisdiction to ensure its order is carried out. Consequently, when a trial court interprets a statute and orders the agency to apply that interpretation-as happened here-the agency must do so. If the agency ignores the trial court's instructions, the court retains the power to take further action to ensure compliance.
 

 There are limits to this supervisory authority, however. The trial court's authority to supervise the agency's actions extends only to issues "actually presented and necessarily involved in determining the case."
 
 Tennessee-Carolina Transp., Inc. v. Strick Corp
 
 .,
 
 286 N.C. 235
 
 , 239,
 
 210 S.E.2d 181
 
 , 183 (1974). In other words, the trial court's continuing jurisdiction applies to issues involving "the same facts and the same questions, which were determined in the previous appeal."
 

 Id.
 

 Here, the trial court properly concluded that the agency's determination of Pachas's CAP/DA program eligibility involved
 
 different
 
 facts and legal issues than the traditional Medicaid benefits at issue in its first order. As the trial court observed, its first order instructed the State "to reinstate Petitioner's Medicaid eligibility through the North Carolina Medicaid State Plan pursuant to the controlling federal statutory provision, 42 U.S.C. § 1396a(m)."
 

 The court then observed that Pachas later "voluntarily applied for Medicaid eligibility through the Community Alternative Program for Disabled Adults ... which is governed by [a] separate federal statute, 42 U.S.C. § 1396n(c)." Unlike the traditional Medicaid program at issue in the court's first order, the CAP/DA program permits the State to seek waivers from various provisions of the Medicaid statutes. 42 U.S.C. § 1396n(c). The State contends that it requested, and received, a waiver from the requirement that it calculate CAP/DA income limits based on a "family of the size involved" under 42 U.S.C. § 1396a(m).
 

 The scope of this waiver provision, and whether the State in fact applied for and received a waiver of the income limits provision, involve facts and legal questions that were
 
 not
 
 "actually presented and necessarily involved" in the trial court's order addressing traditional Medicaid coverage.
 

 *83
 

 Tennessee-Carolina Transp., Inc.
 
 ,
 
 286 N.C. at 239
 
 ,
 
 210 S.E.2d at 183
 
 . Indeed, these issues
 
 could not
 
 have been addressed in the court's first order because, as the parties concede, with respect to traditional Medicaid coverage, the statutory income limit requirements cannot be waived.
 

 As a result, the trial court correctly held that "the Order signed on March 17, 2016 does not apply to Petitioner's Medicaid eligibility under the CAP/DA waiver" and that
 
 *140
 
 "Petitioner must resort to the administrative process governed by N.C.G.S. § 108A-79 to appeal the February 14, 2017 decision issued by the Mecklenburg County DSS." The trial court lacks jurisdiction to review the legal and factual issues raised in this appeal until they reach the court through exhaustion of the administrative review process and a petition for judicial review.
 

 We recognize that this is a frustrating result for the Pachas family, who already fought one lengthy administrative battle with the agency and must now do so again. And we agree with our dissenting colleague that requiring a "dying indigent" to slog through this pointless bureaucracy before presenting his legal arguments to a court of law feels "unjust and wrong." But it is what the law requires. Although the agency seems convinced of its legal position, that does not make the administrative review process "futile" or "inadequate" as those terms are defined by law.
 
 See
 

 Huang v. North Carolina State Univ.
 
 ,
 
 107 N.C. App. 710
 
 , 715,
 
 421 S.E.2d 812
 
 , 815-16 (1992). Once Pachas has an opportunity to be heard on these issues in the administrative review process, the agency might well agree and rule in his favor.
 

 Simply put, the law requires Pachas to exhaust administrative remedies before presenting these new legal and factual arguments to the trial court. If requiring claimants like Pachas to exhaust administrative remedies in these circumstances is unfair or unjust, it is up to those who enacted these administrative laws and regulations to fix it. We reject our dissenting colleague's view that judges can ignore the law if the outcome seems to them unjust or wrong. Even if all judges were angels, this would be dangerous. And we are not angels.
 

 Although we reject Pachas's arguments on appeal, we make two observations about this case in the interest of justice. First, much of the parties' briefing concerned the portion of the trial court's order stating that "[a]ccording to 42 U.S.C. § 1396n(c)(3), DHHS is allowed to waive the State Plan requirements for income and resource rules under 42 U.S.C. § 1396a(m)." Because, as explained above, the trial court lacked jurisdiction to adjudicate the CAP/DA coverage issue, the court had no authority to decide this question. The State
 
 asserts
 
 that it has this
 
 *84
 
 waiver authority, but that legal question-and the factual question of whether the State actually applied for and received such a waiver-are issues that must be decided through the agency review process.
 

 Second, a Medicaid recipient ordinarily must appeal a decision of a county department of social services within 60 days from the date of the agency's action. N.C. Gen. Stat. § 108A-79(c). The statutes governing the administrative review process state that failure to timely appeal constitutes a waiver but "for good cause shown, the county department of social services may permit an appeal notwithstanding the waiver."
 

 Id.
 

 Pachas sought review directly in the trial court, rather than through the administrative process, in good faith. His arguments on appeal were not frivolous. If there was ever a case in which good cause exists to permit an untimely administrative appeal, this is it.
 

 Conclusion
 

 For the reasons discussed above, we affirm the trial court's order dismissing Pachas's motion and petition for lack of jurisdiction.
 

 AFFIRMED.
 

 Judge ELMORE concurs.
 

 Judge HUNTER, JR. dissents with separate opinion.
 

 HUNTER, JR., Robert N., Judge, dissenting in separate opinion.
 

 I respectfully dissent from the majority's holding that the trial court lacked jurisdiction to review the legal and factual issues raised in this appeal until Carlos Pachas
 
 [1]
 
 reaches the court through exhaustion of the administrative review process and a petition for judicial review. As Pachas's exhaustion of the administrative review process is imperative to the issues raised in this appeal, a chronological timeline of events is necessary.
 

 At the relevant time, Pachas, age 47, financially supported his immediate and extended family. His wife, Julissa, their two minor
 
 *141
 
 daughters, and his elderly in-laws, ages 76 and 73, all lived with Pachas in Mecklenburg County, North Carolina. Pachas's mother-in-law suffered from osteoporosis. Due to his in-laws' inability to pay rent, Pachas and
 
 *85
 
 his wife provided them with food and clothing. Both minor daughters received $336 per month in Social Security income.
 

 In December 2013, Pachas's "problems really started ... [as] ... his vision ... was starting to decline[.]" In 2014, Pachas suffered a stroke and brain tumor, which resulted in required 24-hour care. Consequently, Pachas's doctor
 
 [2]
 
 "disabled him because ... according to the MRI result he couldn't work anymore."
 
 [3]
 
 Although disabled in 2014, Medicare eligibility began in 2016. In January 2015, Pachas started receiving $1,369 per month as Social Security Disability Benefits and sometime later applied for Medicaid/Special Assistance re-enrollment.
 
 [4]
 
 However, on 20 April 2015, Mecklenburg Department of Social Services ("DSS") requested Pachas provide proof of income for himself and Julissa, and all bank numbers and statements in his and Julissa's names. The request for information set a deadline of 2 May 2015.
 

 During this time, Julissa, an employee of Bissell Companies, left her job to care for Pachas. She explained, "I ha[d] to stop working because he, started getting very sick. ... He had numerous, several different problems, and I had to stop working. He need[ed] a lot of therapies." On 9 March 2015, Pachas executed a power of attorney, authorizing Julissa to act on his behalf. On 1 May 2015, Bissell Companies notified Julissa, as of 3 May 2015, her coverage under Bissell's group medical, dental, and vision insurance would cease due to separation from employment.
 

 On 5 May 2015, DSS sent notice to Pachas, informing him his Medicaid benefits would terminate, unless he met a $6,642 six-month deductible. Pachas requested an administrative hearing to appeal the termination of his benefits and contended "[h]ad DSS applied the applicable income limit for a household of either four or six persons, [Pachas] would have remained eligible for MAD benefits without having to meet a deductible[.]" The applicable income limit for a household of four persons, in 2015, was $2,021. The applicable income limit for a household of six persons, in 2015, was $2,715. Pachas asserted the North Carolina Department of Health and Human Services ("DHHS") violated 42 U.S.C. 1396a(m) by concluding the Medicaid income limit applicable to him was the limit for a single individual. According to Pachas's petition, the
 
 *86
 
 applicable individual income limit is 100% of the federal poverty line for a "family of the size involved." Pachas contended the family of the size involved in the present case is four to six individuals. The family of the size involved would be four, if only counting Pachas, Julissa, and their two daughters. However, the family of the size involved would be six, if counting his in-laws as members of Pachas's family.
 

 As the first step in the administrative review process, in May 2015, DSS held a local hearing to discuss Pachas's contentions. At the local hearing, DSS specialist, Melinda Bass, heard statements regarding the disputed deductible. Pachas requested the applicable income limit be four to six individuals. On 13 May 2015, Pecolia Price, a Local Hearing Officer, affirmed the agency's decision. In support of her decision, she cited Medicaid Manual ("MA") section 2360, which states, "[m]edically needy recipients whose net income exceeds the Medically Needy Income Limit must meet a deductible before they may be authorized for Full Medicaid. The deductible is met by incurring medical expenses equal to the amount of the deductible." Price concluded "the county action on this case was correct and that all of the appropriate policies and procedures were followed."
 

 Pachas next requested an appeal at the DSS state level. On 16 June 2015, DSS held a state hearing. Again, DSS cited MA 2360 to support its actions regarding Pachas's Medicaid coverage. During the hearing, Pachas's
 
 *142
 
 attorney asked Julissa to speak to Pachas's medical situation:
 

 [Q]: ... And, does [Pachas] still have a need for medical treatment?
 

 ...
 

 [A]: He needs a lot of therapies. He also needs that thing that is for cancer. Chemotherapy or something like that, but he doesn't have cancer. He has vasculitis, in the brain. He's taking steroids for a year and a half. The doctor needs to remove the, take away him from steroids. He cannot take it anymore, that's why he needs chemotherapy. The chemotherapies are extremely expensive.
 

 [Q]: Without Medicaid is he able to afford, afford the chemotherapy and physical therapy that the doctor has recommended?
 

 ...
 

 [A]: No. ... I cannot even cover his medicines, monthly medicines because they are extremely expensive.
 

 *87
 
 [Q]: And without the treatment and medicines that have been recommended will [Pachas] ever be able to recover?
 

 ...
 

 [A]: Impossible.
 

 In support of his contentions, Pachas cited
 
 Martin v. North Carolina Department of Health and Human Services
 
 .
 
 [5]
 
 Pachas insisted a "family size" included those who lived with and relied upon him, therefore making an individual income level inapplicable to his current situation.
 

 On 10 August 2015, Gwendolyn Vinson, a State Hearing Officer, affirmed Pachas's six-month Medicaid deductible requirement. Pachas appealed the decision on 13 August 2015. On 27 August 2015, Pachas filed an argument, in support of their appeal with DHHS, appealing the DSS state hearing decision, and contending DHHS must compare Pachas's income against 100% of the official federal poverty level for his family size. Further, Pachas argued the hearing officer plainly erred in her interpretation of the applicable federal statute.
 

 On 1 October 2015, DHHS Assistant Chief Hearing Officer, Nancy Pappenhagen, affirmed the 10 August 2015 decision. Within her decision, Pappenhagen concluded, as a final decision, Pachas's Medicaid services required a $6,642 deductible. On 16 October 2015 Pachas filed a petition for judicial review, pursuant to N.C. Gen. Stat. § 108A-79(k) and the Administrative Procedure Act, N.C. Gen. Stat. § 150B-43,
 
 et seq.
 
 Pachas sought reversal of the 1 October 2015 final agency decision, which terminated his Medicaid Benefits. Additionally, Pachas requested reinstatement of his Medicaid Benefits, effective 1 June 2015, and for continuation of his benefits without having to meet the deductible. Pachas again contended DHHS erred by concluding "the Medicaid income limit applicable to [him] was the limit for a single individual in violation of 42 U.S.C. 1396a(m), under which the applicable income limit is 100% of the federal poverty line for a 'family of the size involved.' "
 

 On 17 November 2015, DHHS filed a response to Pachas's petition for judicial review. DHHS contended "the Final Agency Decision of [DHHS] contains adequate findings of fact and conclusions of law which are in conformity with the applicable federal and State statutes, rules, regulations, cases, and policies, and are supported by substantial competent evidence of record."
 

 *88
 
 On 6 January 2016, the Mecklenburg County Superior Court heard arguments from Pachas and DHHS regarding Pachas's Medicaid benefits and large deductible requirement. In its 17 March 2016
 
 [6]
 
 order, the trial court reversed the final agency decision. The trial court ordered DHHS "promptly reinstate Medicaid benefits to [Pachas] effective June 1, 2015 and to continue providing Medicaid to [Pachas] until determined ineligible under the rules as modified according to this decision." The trial court found the final agency decision "erroneous as a matter of law[.]" Specifically, the trial court found:
 

 2. The North Carolina General Assembly has elected the option under the federal
 
 *143
 
 Medicaid statute, 42 U.S.C. § 1396a(m), to provide Medicaid to aged, blind and disabled persons with incomes under 100% of the federal poverty level. ... This category of Medicaid is known as categorically needy coverage for the aged, blind and disabled (MABD-CN).
 

 3. The income limit for MABD-CN varies by the number of persons considered by the agency to be in the household unit because the federal poverty line varies by household size.
 

 ...
 

 8. The plain language of the controlling federal statutory provision, 42 U.S.C. § 1396a(m), states that the applicable Medicaid income limit for the MABD-CN category must be based on a "family of the size involved." Because the official poverty line published annually by the federal government varies by family size, the determination of family size determines the applicable income limit under the language of this statute.
 

 9. The Federal Medicare and Medicaid agency has interpreted the language "a family of the size involved" to include "the applicant, the spouse who is living in the same household, if any, and the number of individuals who are related to the applicant or applicants, who are living in the same household and who are dependent on the applicant or the applicant's spouse for at least one-half of their financial support."
 
 42 C.F.R. § 423.772
 
 (2005).
 

 *89
 
 DHHS did not appeal this order. Instead, pursuant to the 17 March 2016 order, DHHS reinstated Pachas's Medicaid benefits, retroactive to 1 June 2015.
 

 During the above summarized proceedings, Pachas's medical condition worsened. A physician diagnosed Pachas with encephalitis and sepsis, rendering
 
 [7]
 
 Pachas "completely blind, wheelchair bound, and fully dependent on others for all his daily needs." Additionally, the physician noted Pachas was confused and restless.
 

 On 6 May 2016, University Place admitted Pachas as a patient, where he received 24-hour care. Pachas remained in the facility until his discharge in February 2017. During this time, Pachas's Medicaid benefits covered his care, with no need to meet a deductible.
 

 Following his time at University Place, Pachas received home care through the Community Alternative Program for Disabled Adults ("CAP/DA"). As described by Petitioner, CAP/DA is a program which "provides Medicaid services in the home for persons who would otherwise require care in a nursing home." Pachas's CAP/DA services cost $33,714.89 annually, while his Medicaid reimbursement rate of his nursing home facility cost $160.23 per day.
 

 On 14 February 2017, DSS sent Pachas a notice, stating his monthly CAP/DA deductible would be $1,113, effective 28 February 2017. DSS, again, assessed his individual income when determining CAP/DA eligibility. On 15 February 2017, Pachas filed a motion in the cause to enforce the 17 March 2016 order and filed a petition for a writ of mandamus. In support of the motion and petition, Pachas contended he "[wa]s ... imminently threatened with irreparable harm and ha[d] no adequate remedy at law." He further asserted:
 

 12. Because they need to support a family of six, [Pachas] and his wife cannot afford to pay for medical care up to the amount of [his] monthly deductible .... If that occurs, [Pachas] will be unable to obtain his medications, his CAP-DA in-home care services, and other critically needed medical care.
 

 13. If [Pachas] loses access to CAP-DA services, he will likely be forced to leave his family again and enter a nursing home, at great expense to the taxpayer, causing severe emotional harm to [Pachas] and his family.
 

 *90
 
 14. ... [Pachas] has no available administrative remedy to enforce th[e] Court's order. Exhaustion of the administrative remedy that has been offered to him would be futile.
 

 Pachas requested,
 
 inter alia
 
 , the court direct DHHS "to immediately reinstate [his] Medicaid benefits, including [his] CAP-DA services, effective February 14, 2017 and
 
 *144
 
 continuing without having to first meet a deductible."
 

 On 6 March 2017, DHHS filed a motion to dismiss and response to Pachas's motion to cause to enforce the trial court's order and petition for writ of mandamus. DHHS contended:
 

 4. The administrative procedures by which a public assistance applicant or recipient may appeal the actions and decisions of a county department of social services ... are provided in N.C. Gen. Stat. § 108A-79 and Article 4 of the North Carolina Administrative Procedure Act.
 

 5. Under N.C. Gen. Stat. § 108A-79, "A public assistance applicant or recipient shall have a right to appeal the decision of the county board of social services, county department of social services, or the board of county commissioners ...." These statutory administrative appeal procedures include local appeal hearings with the county DSS, state level administrative appeal hearings with the DHHS Office of Hearings and Appeals, and appeal to the Superior Court for judicial review of DHHS final agency decisions.
 

 ...
 

 7. In this case, the legislature has provided adequate administrative remedies for the actions and decision that [Pachas] complains of in his Motion in the Cause to Enforce Court's Order and Petition for Writ of Mandamus, and [Pachas] has not exhausted the statutory administrative remedies that are available to him.
 

 In support of its argument, DHHS stated:
 

 9. In this case, there can be no question that the actions and decisions of the Mecklenburg County DSS in evaluating [Pachas]'s CAP/DA Waiver application for services involve discretionary rather than ministerial duties. The criteria used for evaluating an application for CAP/DA
 

 *91
 
 Waiver eligibility is not governed by the March 17, 2016 Order but instead by state and federal statutes, regulations, and policies, including 42 U.S.C. § 1396n, the North Carolina CAP/DA Waiver, and relevant sections of the North Carolina Adult Medicaid Manual.
 

 ...
 

 13. Such an overly expansive application of the March 17, 2016 Order, as requested by [Pachas], would have the effect of entitling [Pachas] to unlimited access to any and all Medicaid eligibility and services regardless of the relevant state and federal statutes, regulations, and policies ....
 

 On 27 March 2017, the trial court heard arguments from Pachas and DHHS on Petitioner's motion to enforce the court's order and petition for writ of mandamus. On 17 April 2017, Pachas passed away.
 
 [8]
 
 Four days later, on 21 April 2017, the trial court dismissed the motion in the cause to enforce court's order and petition for writ of mandamus. The trial court concluded:
 

 2. The [17 March 2016] Order found that the language "family of the size involved" contained in 42 U.S.C. § 1396a(m) must be considered when determining [Pachas]'s Medicaid eligibility under the State Plan.
 

 ...
 

 6. According to 42 U.S.C. § 1396n(c)(3), DHHS is allowed to waive the State Plan requirements for income and resource rules under 42 U.S.C. § 1396a(m) that the Court considered in the March 17, 2016 Order.
 

 7. DHHS does not consider the "size of the family involved" when determining an individual's deductible under the CAP/DA waiver.
 

 8. Therefore, the Order signed on March 17, 2016 does not apply to [Pachas]'s Medicaid eligibility under the CAP/DA waiver.
 

 On appeal, DHHS asserts the federal government authorized DHHS to waive the income requirements, which includes the "family of the size
 
 *92
 
 involved" requirement, found in 42 U.S.C. 1396a(m) when determining financial eligibility for CAP/DA coverage. The majority holds the waiver provision relied upon by the State "involve[s] facts and legal questions that were
 
 not
 
 'actually presented and necessarily involved' in the trial court's order." Therefore, the majority holds, these issues "
 
 could not
 
 have been addressed in the
 
 *145
 
 court's first order ...." Thus, as a result, the majority agrees with the trial court's order "Petitioner must resort to the administrative process ... to appeal the February 14, 2017 decision issued by the Mecklenburg County DSS."
 

 As stated in the majority, "the General Assembly created an administrative review process
 
 *82
 
 for these claims, and courts have jurisdiction to hear these disputes only when they arrive through a petition for judicial review after exhaustion of this administrative review."
 
 See
 
 N.C. Gen. Stat. §§ 108A-79, 150B-43 (2017). However, Pachas is correct that it is well settled the "exhaustion requirement may be excused if the administrative remedy would be futile or inadequate."
 
 Justice for Animals, Inc. v. Robeson Cty.
 
 ,
 
 164 N.C. App. 366
 
 , 372,
 
 595 S.E.2d 773
 
 , 777 (2004) (citing
 
 Huang v. N.C. State Univ.
 
 ,
 
 107 N.C. App. 710
 
 , 715,
 
 421 S.E.2d 812
 
 , 815 (1992) ). In holding Pachas must resort to the administrative process, the majority does not address the futility or inadequacy of the administrative remedies in the instant case.
 

 Given the tragic history of Pachas, I cannot vote to place him, or others similarly situated, back in the hands of the Medicaid bureaucracy, which has already denied benefits on the identical question of family size and its relation to required deductibles for Medicaid coverage. In my view, it is particularly telling that in the first case, the law of his case was based upon the conclusion that the State had made an error of law in denying him benefits. To tell a dying indigent that he or his family must endure another round of "administrative remedies", when the Medicaid authorities moved him from one program to another for their own cost benefits, and when the issue is a matter of law, which had been previously adjudicated, is simply unjust and wrong. Under the specific facts of this case, I would hold requiring the dying indigent to exhaust his administrative remedies would be futile.
 

 N.C. Gen. Stat. § 108A-79 (2017) provides the remedy for individuals who wish to challenge the termination of their Medicaid coverage. The statute, in pertinent part, reads:
 

 A public assistance applicant or recipient shall have a right to appeal the decision of the county board of social services, county department of social services, or the board
 
 *93
 
 of county commissioners granting, denying, terminating, or modifying assistance, or the failure of the county board of social services or county department of social services to act within a reasonable time under the rules and regulations of the Social Services Commission or the Department. Each applicant or recipient shall be notified in writing of his right to appeal upon denial of his application for assistance and at the time of any subsequent action on his case.
 

 Id.
 

 However, in the present appeal, Pachas is not simply challenging the Medicaid coverage termination, but, rather, the violation of the trial court's 17 March 2016 order requiring DHHS to apply his family size to income considerations. Specifically, this is an appeal for enforcement.
 

 A trial court's authority encompasses the power to enforce its own judgments.
 
 See
 

 Sturgill v. Sturgill
 
 ,
 
 49 N.C. App. 580
 
 , 587,
 
 272 S.E.2d 423
 
 , 428-29 (1980) ;
 
 Parker v. Parker
 
 ,
 
 13 N.C. App. 616
 
 , 618,
 
 186 S.E.2d 607
 
 , 608 (1972). Here, Petitioner has once, already, fully exhausted the administrative review process, thereby complying with the requirement to do so. The administrative review process produced an order which supported Pachas's challenge of initial Medicaid coverage. Now, he seeks judicial review for the enforcement of such order after it was violated by DHHS and DSS.
 

 In concluding the trial court lacks jurisdiction to enforce its 17 March 2016 order, the majority seemingly strips Pachas, and those similarly situated, of an adequate remedy. Mindful of the necessity of the administrative review process, but aware of the administrative review process's inability to provide Pachas with an adequate remedy, I conclude the trial court does have jurisdiction to decide this issue. I would, therefore, reverse the trial court's 21 April 2017 decision and remand with instructions to re-determine Pachas's Medicaid eligibility, in compliance with the 17 March 2016 order.
 

 [1]
 

 On appeal, Pachas's estate is represented by the administrator of the estate, Julissa Pachas.
 

 [2]
 

 The record does not disclose which doctor labeled Pachas as disabled.
 

 [3]
 

 The record does not disclose in what field Pachas worked prior to the decline of his health.
 

 [4]
 

 The record does not indicate on which date Pachas submitted an application for re-enrollment for the Medicaid/Special Assistance Program.
 

 [5]
 

 Martin v. N.C. Dep't of Health & Human Servs.
 
 ,
 
 194 N.C. App. 716
 
 ,
 
 670 S.E.2d 629
 
 (2009).
 

 [6]
 

 Although entered on 18 March 2016, the parties refer to this order as the 17 March 2016 order. I follow suit.
 

 [7]
 

 The record does not indicate the physician's name and medical history with Pachas.
 

 [8]
 

 The court substituted Julissa as a party in the action.