IN THE SUPREME COURT OF NORTH CAROLINA

No. 144A18

Filed 1 February 2019

CARLOS PACHAS, by his attorney in fact, JULISSA PACHAS,

Petitioner

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 814 S.E.2d 136 (2018), affirming an order entered on 21 April 2017 by Judge W. Robert Bell in Superior Court, Mecklenburg County. Heard in the Supreme Court on 1 October 2018.

*Charlotte Center for Legal Advocacy, by Douglas Stuart Sea and Cassidy Estes-Rogers, for petitioner-appellant.*

*Joshua H. Stein, Attorney General, by Lee J. Miller, Assistant Attorney General, for respondent-appellee.*

*John R. Rittelmeyer for Disability Rights North Carolina, amicus curiae.*

HUDSON, Justice

This case comes to us by way of petitioner's notice of appeal based on a dissenting opinion in the Court of Appeals. We now review "whether the Court of Appeals erred as a matter of law in ruling that the superior court lacked jurisdiction to decide whether its previous order was being violated by a state agency on the

grounds that petitioner failed to exhaust administrative remedies before moving to enforce the court's order." Because we conclude that the superior court had jurisdiction to enforce its previous order, we vacate the Court of Appeals' decision. *Pachas v. N.C. Dep't of Health & Human Servs.*, ___ N.C. App. ___, ___, 814 S.E.2d 136, 137 (2018). Accordingly, we remand this case to the Court of Appeals to address the merits of respondent's argument that the North Carolina Department of Health and Human Services (DHHS) did not violate the 17 March 2016 order.

## I.     Factual and Procedural Background

Petitioner Carlos Pachas, a resident of Mecklenburg County, and a Medicaid recipient, was left completely disabled and requiring twenty-four hour care as result of a stroke and a brain tumor in 2014. At the time, petitioner lived with his wife, their two minor children, and his wife's elderly parents. All members of the household were dependent on petitioner for their financial support. In January 2015, he began receiving Social Security Disability benefits, and thereafter applied for re-enrollment in Medicaid.

On 5 May 2015, the Mecklenburg County Department of Social Services (DSS) sent petitioner a notice that his currently ongoing Medicaid benefits would be terminated starting on 1 June 2015, and that he would need to meet a deductible of $6642 during the period of 1 May through 31 October 2015 to regain eligibility for Medicaid benefits. The DSS decision was based on the agency's determination that petitioner, because of his monthly Social Security Disability benefits of $1369 that

began in January 2015, exceeded the income limit for an individual to qualify for Medicaid as "Categorically Needy"—the income limit being one hundred percent of the federal poverty level[1]—and that petitioner now qualified for Medicaid as "Medically Needy" under DSS regulations. Under these regulations, "Categorically Needy" Medicaid recipients are not charged a deductible, but "Medically Needy" recipients are. Medicaid Eligibility Unit, Div. of Med. Assistance, N.C. Dep't of Health & Human Servs., *Aged Blind and Disabled Medicaid Manual*, MA-2360 ¶ I (Nov. 1, 2011).

Petitioner requested a hearing before DSS concerning the termination of his Medicaid benefits, and the hearing was held on 8 May 2015. On 13 May 2015, DSS sent petitioner a Notice of Decision affirming the termination of his Medicaid benefits. The Notice of Decision instructed petitioner that he could appeal the matter to DHHS. On the same day, petitioner filed a written request to appeal the decision, and the appeal was heard on 16 June. DHHS affirmed DSS's decision requiring Pachas to meet a $6642 deductible in a Notice of Decision dated 10 August 2015.

On 13 August, Pachas as petitioner appealed the unfavorable decision to DHHS, and he submitted his written appeal on 27 August 2015. In his appeal, petitioner maintained that DHHS erred in affirming the DSS decision to discontinue

---

[1] This income limit was established by the Current Operations and Capital Improvements Appropriations Act of 2013, sec. 12H.10.(a)-(b)(1), 2013 N.C. Sess. Laws 2013-360 (Regular Sess.) 995, 1180-81.

his Medicaid benefits arguing that DSS's method of calculating his income eligibility for Medicaid "violate[s] the plain language of the federal Medicaid statute and controlling North Carolina case law."

First, petitioner argued that DSS's policy violates the plain language of the controlling federal Medicaid statute, 42 U.S.C. § 1396a(m). Petitioner stated that the General Assembly elected to provide Medicaid to aged, blind, and disabled persons with incomes under one hundred percent of the federal poverty level. Petitioner noted that beneficiaries who meet these criteria are considered to be "Categorically Needy," and their eligibility for Medicaid is governed by 42 U.S.C. § 1396a(m). Petitioner then pointed to § 1396a(m)(2)(A), which states that a beneficiary's income level is determined by considering "a family of the size involved." Petitioner contended that this language required DSS to determine whether his monthly income from Social Security Disability payments was more than one hundred percent of the federal poverty line if used not just to support himself, but to support all six members of his family as dependents.

Second, petitioner argued that the North Carolina Court of Appeals' decision in *Martin v. North Carolina Department of Health and Human Services*, 194 N.C. App. 716, 670 S.E.2d 629, *disc. rev. denied*, 363 N.C. 374, 678 S.E.2d 665 (2009), required DSS to determine whether petitioner's income exceeded one hundred percent of the federal poverty guideline if used to support all six members of his family. According to petitioner, *Martin* involved a parallel Medicaid eligibility

category, Medicaid for Qualified Medicare Beneficiaries (MQB-B), which contained the same "family of the size involved" language. Petitioner further noted that the court in *Martin* held that "a family of the size involved" meant "a group consisting of parents and their children; a group of persons who live together and have a shared commitment to a domestic relationship." 194 N.C. App. at 722, 670 S.E.2d at 634. As a result, Pachas argued that *Martin* directed DHHS to consider his entire family when calculating whether his income rose above one hundred percent of the federal poverty level.

Finally, petitioner pointed to a decision of the Superior Court in Mecklenburg County that he viewed as applying the reasoning in *Martin* to "all individuals who receive Medicaid benefits on the basis of disability." *See Cody v. N.C. Dep't of Health & Human Servs.,* No. 13 CVS 19625 (N.C. Super. Ct. Mecklenburg County Mar. 11, 2014). Additionally, petitioner argued that "failure to consider his wife, children and dependent parents as part of his family leads to absurd results and violates the purpose of the Medicaid Act."

In its Final Decision, dated 1 October 2015, DHHS affirmed that petitioner must meet a deductible in order to regain eligibility for Medicaid given that his income exceeded one hundred percent of the federal poverty guideline for a single individual. On 16 October 2015, petitioner sought judicial review of the DHHS Final Decision in the Superior Court in Mecklenburg County. Petitioner requested that the court grant the following relief: (1) reverse the final agency decision and declare

DHHS's interpretation of the law illegal; (2) order DHHS to reinstate petitioner's Medicaid benefits without requiring a deductible effective 1 June 2015; and (3) award petitioner costs and a reasonable attorney's fee. In support of this request for relief, petitioner claimed, in pertinent part, that DHHS erred by "concluding that the Medicaid income limit applicable to Petitioner was the limit for a single individual in violation of 42 U.S.C. § 1396a(m), under which the applicable income limit is 100% of the federal poverty line for a 'family of the size involved.' "

On 17 March 2016,[2] the Superior Court in Mecklenburg County signed an order reversing the final decision of DHHS. The superior court reached this determination because it concluded that:

2. The North Carolina General Assembly has elected the option under the federal Medicaid statute, 42 U.S.C. § 1396a(m), to provide Medicaid to aged, blind and disabled persons with incomes under 100% of the federal poverty level. This category of Medicaid is known as categorically needy coverage for the aged, blind and disabled (MABD-CN).

3. The income limit for MABD-CN varies by the number of persons considered by the agency to be in the household unit because the federal poverty line varies by household size.

4. The DHHS Medicaid rule at issue in this case is contained in Section 2260 of the DHHS Adult Medicaid Manual. Under this provision, only the aged, blind or

---

[2] The dissenting judge at the Court of Appeals noted that although the order was entered on 18 March 2016, he was going to refer to the order as the 17 March 2016 order because that was how the parties had been referring to it. *Pachas*, ___ N.C. at ___, 814 S.E.2d at 142 n.6 (Hunter Jr., J., dissenting).

disabled individual is considered to be part of the household unit used for determining the applicable income limit for MABD-CN. The only exceptions in this rule are where the spouse of the individual is also aged, blind or disabled, or where the spouse has income that is deemed available to the aged, blind or disabled individual, in which case the household size is two.

. . . .

6. Pursuant to the challenged DHHS rule, Mecklenburg County DSS determined that Mr. Pachas' Social Security income of $1396 per month was greater than $981 per month, which is the current federal poverty limit for a household size of one person.

. . . .

8. The plain language of the controlling federal statutory provision, 42 U.S.C. § 1396a(m), states that the applicable Medicaid income limit for the MADB-CN category must be based on a "family of the size involved." Because the official poverty line published annually by the federal government varies by family size, the determination of family size determines the applicable income limit under the language of this statute.

9. The Federal Medicare and Medicaid agency has interpreted the language "a family of the size involved" to include "the applicant, the spouse who is living in the same household, if any, and the number of individuals who are related to the applicant or applicants, who are living in the same household and who are dependent on the applicant or the applicant's spouse for at least one-half of their financial support." 42 C.F.R. § 423.772 (2005).

10. There is no dispute in the record or the briefing that Petitioner is providing over half of the financial support for his wife, their two minor children and his wife's elderly parents, all of whom live with Petitioner.

11. In *Martin v. North Carolina Department of Health and Human Services*, the North Carolina Court of Appeals interpreted the identical phrase, "family of the size involved," applied to similar facts, in reviewing a parallel provision of the federal Medicaid statute for the MQB category of benefits. The Court of Appeals held that the DHHS interpretation of "family of the size involved" for the MQB program violated the federal Medicaid statute and was therefore invalid.

12. Following the *Martin* decision, DHHS updated its Medicaid state plan and manual provisions to clarify that MQB eligibility must be based upon "family size" which includes "the [applicant/beneficiary], the spouse if there is one, and any dependent children under age 18 living in the home." However, DHHS did not change its rule as to the MABD-CN category.

13. The provisions of the Federal Medicaid statute at issue in *Martin* and in this case contain precisely the same language regarding both the determination of family size and the countable income for Medicaid beneficiaries.

14. DHHS conceded at oral argument that prior to the *Martin* ruling, the same methodology for determining eligibility was used for both the MADB-CN and MQB programs.

(second alteration in original). While reversing the DHHS final decision on these grounds, the superior court ordered, in pertinent part, that DHHS "promptly reinstate Medicaid benefits to Petitioner effective June 1, 2015 and [ ] continue providing Medicaid to Petitioner until determined ineligible under the rules as modified according to this decision."

Following the superior court's reversal of the DHHS final decision, on 13 April 2016, DHHS instructed Mecklenburg County DSS to reinstate petitioner's Medicaid benefits. Thereafter, following a hospital stay, Pachas entered a nursing facility on 6 May 2016, and his Medicaid benefits continued the entire time he was in the nursing home; on 14 February 2017, he was discharged from the nursing facility and returned home to live with his family. Pachas suffered from anxiety as well as his physical conditions while being away from his family. Pachas was to receive at-home care under Medicaid's Community Alternative Program for Disabled Adults (CAP-DA).

On the same day Pachas left the nursing facility and his care under CAP-DA was set to begin, Mecklenburg County DSS mailed him a notice that his benefits would be changed and, effective 1 March 2017, he would be required to meet a monthly deductible of $1113 for his CAP-DA care. In the notice DSS stated that the change in benefits was required by state regulations found in "MA 2280." The notice also advised Pachas that he had sixty days to request an agency hearing if he disagreed with the decision.

Instead of requesting an agency hearing, Pachas filed a motion in the cause to enforce the court's order and a petition for writ of mandamus in the Superior Court in Mecklenburg County on 15 February 2017. In the motion and petition, Pachas requested the following relief pertinent to this appeal: (1) entry of an order enforcing the court's 17 March 2016 order and directing North Carolina DHHS "to immediately

reinstate his Medicaid benefits, including his CAP-DA services," and ordering that the benefits be continued without his having to first meet a deductible; (2) issuance of a writ of mandamus ordering DHHS to reinstate his benefits effective 14 February 2017; and (3) entry of an order requiring Mecklenburg County DSS to reinstate his benefits if DHHS failed to do so within ten days of the court's forthcoming order.

On 6 March 2017, DHHS moved to dismiss petitioner's motion and petition. DHHS argued, in pertinent part, that the motion and petition should be dismissed for these reasons: (1) the superior court did not have jurisdiction over the matter, because petitioner had not exhausted his administrative remedies; (2) with regard to the petition for writ of mandamus specifically, that petitioner had another adequate remedy at law through the agency appeal process; and (3) petitioner's eligibility for the CAP-DA program did not fall within the 17 March 2016 order, because the CAP-DA program, which has its own eligibility and income limit rules under 42 U.S.C. § 1396n, is a "*Waiver*" program that is separate from the "*State Plan*" that was the subject of the previous order.

In support of his motion in the cause seeking enforcement of the 17 March 2016 order and petition for writ of mandamus, petitioner argued that: (1) DHHS's termination of all of petitioner's Medicaid benefits on 14 February 2017 violated the 17 March 2016 order which required DHHS to immediately reinstate petitioner's Medicaid benefits and continue to provide them until petitioner is "determined ineligible under the rules as modified according to [the order]"; (2) under the terms of

DHHS's waiver application for CAP-DA, and as stated in its own instruction manuals, individuals who qualify for Medicaid under the "Categorically Needy" eligibility group, the very category under which the 17 March 2016 order determined that petitioner's benefits were to be reinstated and to continue, are eligible for CAP-DA without a deductible; (3) the CAP-DA waiver provision in 42 U.S.C. § 1396n(c) does not contain any "language waiving the requirement in § 1396a(m) to use 'family size' budgeting"; (4) DHHS's own budgeting rules which state that "the income of a spouse cannot be counted in determining the CAP-DA applicant's Medicaid eligibility" do not apply to "Categorically Needy" Medicaid recipients and are inconsistent with the 17 March 2016 order; and (5) petitioner fully exhausted his administrative remedies previously and he should not be required to do so again now because the superior court has sole jurisdiction to enforce its own order and exhaustion would be an inadequate or futile remedy.

DHHS responded to petitioner's arguments by asserting that the motion and petition should be dismissed on the following grounds: (1) the superior court's 17 March 2016 order "does not apply because it only contemplated Petitioner's eligibility for State Plan services and does not address Petitioner's Medicaid eligibility through the CAP/DA waiver," which is governed by separate federal rules and regulations; (2) petitioner remains eligible for State Plan Medicaid benefits and therefore DHHS did not violate the 17 March 2016 order; (3) petitioner failed to exhaust his available administrative remedies; and (4) petitioner has failed to demonstrate how exhaustion

of his administrative remedies would be futile when the administrative remedy provides "relief more or less commensurate with the claim." *Huang v. N.C. State. Univ.*, 107 N.C. App. 710, 715, 421 S.E.2d 812, 815 (1992).

The superior court dismissed petitioner's motion in the cause to enforce the court's order and his petition for writ of mandamus on 21 April 2017. In so doing, the court found that DHHS "has not violated the Order signed on March 17, 2016." The court reached this decision for the following reasons:

> 6.      According to 42 U.S.C. § 1396n(c)(3), DHHS is allowed to waive the State Plan requirements for income and resource rules under 42 U.S.C. § 1396a(m) that the Court considered in the March 17, 2016 Order.
>
> 7.      DHHS does not consider the "size of the family involved" when determining an individual's deductible under the CAP/DA waiver.
>
> 8.      Therefore, the Order signed on March 17, 2016 does not apply to Petitioner's Medicaid eligibility under the CAP/DA waiver.
>
> 9.      Petitioner must resort to the administrative process governed by N.C.G.S. § 108A-79 to appeal the February 14, 2017 decision issued by the Mecklenburg County DSS.

Following this last order, Julissa Pachas filed a motion on 9 May 2017 to substitute herself as petitioner in the case because Carlos died on 17 April. After being substituted as petitioner, Julissa Pachas appealed the superior court's 21 April 2017 order to the North Carolina Court of Appeals, where she presented the issue of whether "42 U.S.C. § 1396a(m) require[s] respondent/appellee DHHS to determine

eligibility for Medicaid for the aged, blind and disabled in North Carolina based on a 'family of the size involved,' regardless of what Medicaid services the aged, blind or disabled person requests or receives."

The Court of Appeals majority affirmed the 21 April 2017 order of the Superior Court in Mecklenburg County dismissing petitioner's motion and petition based on its conclusion that the trial court lacked jurisdiction. *Pachas*, ___ N.C. App. at ___, 814 S.E.2d at 140. The Court of Appeals reached this decision for two reasons. First, in relying on a previous decision from our Court, the Court of Appeals concluded that "[t]he scope of this waiver provision [under 42 U.S.C. § 1396n(c)], and whether the State in fact applied for and received a waiver of the income limits provision, involve facts and legal questions that were *not* 'actually presented and necessarily involved' in the trial court's [17 March 2016] order addressing traditional Medicaid coverage." *Id.* at ___, 814 S.E.2d at 139 (quoting *Tenn.-Carolina Transp., Inc. v. Strick Corp.,* 286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974)). Specifically, the Court of Appeals majority reasoned that:

> Here, the trial court properly concluded that the agency's determination of Pachas's CAP/DA program eligibility involved *different* facts and legal issues than the traditional Medicaid benefits at issue in its first order. As the trial court observed, its first order instructed the State to "reinstate Petitioner's Medicaid eligibility through the North Carolina Medicaid State Plan pursuant to the controlling federal statutory provision, 42 U.S.C. § 1396a(m)."

*Id.* at ___, 814 S.E.2d at 139.  The Court of Appeals majority determined that the introduction of these different facts and issues deprived the trial court of the supervisory authority and jurisdiction that it generally maintains under Rule 70 of the North Carolina Rules of Civil Procedure to ensure that an agency complies with the court's order.  *Id.* at ___, 814 S.E.2d at 139-40.  As a result, the majority concluded that "[t]he trial court lacks jurisdiction to review the legal and factual issues raised in this appeal until they reach the court through exhaustion of the administrative review process and a petition for judicial review."  *Id.* at ___, 814 S.E.2d at 140.

Second, the Court of Appeals majority concluded that the trial court did not have jurisdiction over petitioner's motion and petition because petitioner could not demonstrate that the administrative review process was "futile" or "inadequate."  *Id.* at ___, 814 S.E.2d at 140.  Specifically, the majority reasoned that "[a]lthough the agency seems convinced of its legal position, that does not make the administrative review process 'futile' or 'inadequate' as those terms are defined by law."  *Id.* at ___, 814 S.E.2d at 140 (citing *Huang*, 107 N.C. App. at 715, 421 S.E.2d at 815-16).

Presumably as a result of its holding that the trial court did not have jurisdiction over petitioner's motion and petition, the Court of Appeals majority did not announce a holding with regard to the ultimate issue that petitioner presented on appeal:  "Does 42 U.S.C. § 1396a(m) require respondent/appellee DHHS to determine eligibility for Medicaid for the aged, blind and disabled in North Carolina based on a 'family of the size involved,' regardless of what Medicaid services the aged,

blind or disabled person requests or receives?" *Id.* at \_\_\_, 814 S.E.2d at 140 (affirming the trial court's dismissal of petitioner's motion and petition only because the trial court lacked jurisdiction).

The dissenting judge at the Court of Appeals disagreed with the majority's decision that the trial court did not have jurisdiction over petitioner's motion and petition and that petitioner would have to exhaust his administrative remedies before seeking judicial review. *Id.* at \_\_\_, 814 S.E.2d at 140 (Hunter Jr., J., dissenting). The dissenting judge concluded that the trial court did have jurisdiction over petitioner's motion and petition for two reasons. First, the dissenting judge noted that "Pachas is correct that it is well settled the 'exhaustion requirement may be excused if the administrative remedy would be futile or inadequate.' " *Id.* at \_\_\_, 814 S.E.2d at 145 (quoting *Justice for Animals, Inc. v. Robeson County.,* 164 N.C. App. 366, 372, 595 S.E.2d 773, 777 (2004)). The dissenting judge reasoned that petitioner's administrative remedy here would be futile and inadequate because:

> Given the tragic history of Pachas, I cannot vote to place him, or others similarly situated, back in the hands of the Medicaid bureaucracy, which has already denied benefits on the identical question of family size and its relation to required deductibles for Medicaid coverage. In my view, it is particularly telling that in the first case, the law of his case was based upon the conclusion that the State had made an error of law in denying him benefits. To tell a dying indigent that he or his family must endure another round of "administrative remedies", when the Medicaid authorities moved him from one program to another for their own cost benefits, and when the issue is a matter of law, which had been previously adjudicated, is

> simply unjust and wrong. Under the specific facts of this case, I would hold requiring the dying indigent to exhaust his administrative remedies would be futile.

*Id.* at ___, 814 S.E.2d at 145.

Second, the dissenting judge reasoned that the trial court had jurisdiction over petitioner's motion and petition because although N.C.G.S. § 108A-79 provides an administrative "remedy for individuals who wish to challenge the termination of their Medicaid coverage," petitioner here "is not simply challenging the Medicaid coverage termination, but, rather, the violation of the trial court's 17 March 2016 order requiring DHHS to apply his family size to income considerations. Specifically, this is an appeal for enforcement." *Id.* at ___, 814 S.E.2d at 145. The dissenting judge added that "[a] trial court's authority encompasses the power to enforce its own judgments." *Id.* at ___, 814 S.E.2d at 145 (first citing *Sturgill v. Sturgill*, 49 N.C. App. 580, 587, 272 S.E.2d 423, 428-29 (1980); and then citing *Parker v. Parker*, 13 N.C. App. 616, 618, 186 S.E.2d 607, 608 (1972)).

Petitioner filed his notice of appeal based on the dissent in the Court of Appeals presenting the following issue: "Did the Court of Appeals majority err as a matter of law in ruling that the superior court lacked jurisdiction to decide whether its previous order was violated because petitioner failed to exhaust administrative remedies before moving to enforce the court's order?"

## II.  <u>Analysis</u>

We conclude that the Court of Appeals did err in ruling that the superior court lacked jurisdiction to decide whether DHHS violated the 17 March 2016 order. Because we so conclude, we vacate the decision of the Court of Appeals affirming the trial court's dismissal of petitioner's motion and petition on that basis. We also remand this case to the Court of Appeals to address the merits of whether the superior court erred in determining that DHHS did not violate the 17 March 2016 order because DHHS allegedly obtained a waiver of the requirements of 42 U.S.C. § 1396a(m) in compliance with 42 U.S.C. § 1396n(c). Because we conclude that the trial court had jurisdiction over petitioner's motion and petition, we need not determine whether exhaustion of administrative remedies was inadequate or futile in this case.

The Court of Appeals erred in concluding that the trial court did not have jurisdiction over petitioner's motion and petition because: (1) trial courts have jurisdiction to find new facts and determine whether a party has been "disobedient" under a court order requiring the party to perform a "specific act," N.C. R. Civ. P. 70, and (2) the Court of Appeals relied on an inapposite case from our Court to conclude that, because the issue of petitioner's CAP-DA eligibility involved "facts and legal questions that were *not* 'actually presented and necessarily involved' " in the 17 March 2016 order, *Pachas*, ___ N.C. App. at ___, 814 S.E.2d at 139 (majority opinion) (quoting *Tenn.-Carolina Transp.,* 286 N.C. at 239, 210 S.E.2d at 183), the trial court did not have jurisdiction over the matter.

This Court reviews a decision of the Court of Appeals to determine whether it contains any errors of law. N.C. R. App. P. 16(a); *State v. Mumford*, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010); *see also State v. Brooks*, 337 N.C. 132, 149, 446 S.E.2d 579, 590 (1994) (explaining that this is the standard of review of a determination by the Court of Appeals whether the case is before us "by appeal of right or discretionary review" (first citing *State v. Colson*, 274 N.C. 295, 163 S.E.2d 376 (1968), *cert. denied,* 393 U.S. 1087, 89 S. Ct. 876, 21 L. Ed. 2d 780 (1969); then citing *State v. Williams*, 274 N.C. 328, 163 S.E.2d 353 (1968); and then citing N.C. R. App. P. 16(a)(1994))).

A. **The trial court had jurisdiction under the North Carolina Rules of Civil Procedure (Rule 70) to find new facts and determine whether DHHS disobeyed the 17 March 2016 order.**

It is well settled that, consistent with their inherent authority to enforce their own orders, North Carolina trial courts have jurisdiction to find new facts and determine whether a party has been "disobedient" under a previous order that required the party to perform a "specific act." N.C. R. Civ. P. 70. Since 1967 the Rules of Civil Procedure have provided in part:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the judge may direct the act to be done at the cost of the disobedient party by some other person appointed by the judge and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the

> disobedient party to compel obedience to the judgment. The judge may also in proper cases adjudge the party in contempt.

N.C. R. Civ. P. 70.

Here it appears that DHHS's decision to cancel petitioner's Medicaid benefits under the CAP-DA program and require him to pay a deductible to regain eligibility invoked the trial court's power to enforce its 17 March 2016 order.[3] In that order the superior court instructed DHHS "to promptly reinstate Medicaid benefits to Petitioner . . . and to continue providing Medicaid to Petitioner until determined ineligible under the rules as modified according to this decision." The rules as modified by the order required that petitioner be considered eligible for Medicaid under the Categorically Needy category so long as his income did not exceed one hundred percent of the federal poverty level based on a family of six while he was providing more one-half of their financial support.

It appears, according to DHHS's own Adult Medicaid Manual and without considering any effect of the waiver that DHHS allegedly obtained, that petitioner—having been determined to fit within the Categorically Needy eligibility group and to be entitled to continued Medicaid benefits under the 17 March 2016 order—should have seamlessly qualified on 14 February 2017 for Medicaid's CAP-DA program without a deductible. Specifically, even DHHS's waiver application pursuant to 42

---

[3] We do not express an opinion on the merits of the waiver issue we are remanding to the Court of Appeals.

U.S.C. § 1396n(c) lists "Categorically Needy" individuals as a Medicaid-eligible group that will be served by the CAP-DA program. Furthermore, DHHS's own manual provides that DHHS will "[d]etermine eligibility [for CAP-DA] according to requirements for the appropriate aid program/category." Medicaid Eligibility Unit, Div. of Med. Assistance, N.C. Dep't of Health & Human Servs., *Aged, Blind and Disabled Medicaid Manual*, MA-2280 ¶ III.A.a.(2) (Oct. 1, 2012) titled "Medicaid Eligibility and CAP Eligibility." Moreover, DHHS's manual states that "[w]hen Medicaid eligibility <u>can</u> be established regardless of eligibility for CAP," DHHS will "not wait for CAP approval" and it will "[a]uthorize [CAP-DA], if appropriate, as for any other applicant." *Id.* MA-2280 ¶ III.A.a.2(c)(1)-(2). Additionally, DHHS's own manual indicates that "Categorically Needy" Medicaid recipients will not be charged a deductible. *See id.* MA-2360 ¶ I (Nov. 1, 2011) (providing that the deductible requirement is only to be applied to Medically Needy Medicaid recipients and "[t]he policy in this section may not be used to find a client eligible in MAABD Categorically Needy – No Money Payment (N) Classification . . . . Deductible does not apply in these coverage's [sic]"). We conclude that—because the 17 March 2016 order determined that petitioner was to continue receiving Medicaid benefits under the "Categorically Needy" eligibility group until he was determined to be ineligible under the rules as modified by that order—DHHS's decision to terminate petitioner's Medicaid benefits under the CAP-DA program on 14 February 2017 and require him to meet a deductible before he could regain his benefits squarely raises the issue of whether

DHHS acted as a "disobedient party" under the 17 March 2016 order. N.C. R. Civ. P. 70.

DHHS contends that it did not disobey the 17 March 2016 order, and that the trial court did not have jurisdiction to enforce that order, because the waiver that it allegedly obtained under 42 U.S.C. § 1396n(c) allowed it to create different eligibility rules for the CAP-DA program. Without reaching any conclusions as to the merits of this argument, we hold that the trial court, in accord with its jurisdiction to find new facts and determine whether a party has been "disobedient" under a previous order directing the party to perform a "specific act," was authorized to determine the precise issue of whether the waiver that DHHS allegedly obtained under 42 U.S.C. § 1396n(c) allowed the agency to comply with the 17 March 2016 order while terminating petitioner's Medicaid benefits under the CAP-DA program on 14 February 2017 and requiring him to pay a deductible before qualifying again for Medicaid.

Our conclusion that the trial court had authority to determine that issue is further supported by the Administrative Procedure Act (the Act) itself. The language of the Act suggests that the General Assembly contemplated that trial courts would have such jurisdiction to enforce their own court orders against disobedient agencies upon motion from a party in the case. Specifically, the Act provides that "[n]othing in this Chapter shall prevent any party or person aggrieved from invoking *any judicial remedy available to the party or person aggrieved under the law* to test the validity of *any administrative action not made reviewable* under this Article."

N.C.G.S. § 150B-43 (2017) (emphases added).

Here the relevant judicial remedy available to petitioner under the law is enforcement of the trial court's 17 March 2016 order. Neither the Act, nor N.C.G.S. § 108A-79 which governs public assistance and social services appeals, provide for administrative review of DHHS's alleged violation of the 17 March 2016 order. *See id.* § 108A-79 (2017) (making no mention that the agency appeals process will consider whether the agency violated a court order during either the local appeal hearing, or the hearing before DHHS, or when rendering the final agency decision); *see also id.* § 108A-79(k) (2017) (stating that the judicial review at the superior court "shall be conducted according to the provisions of Article 4, Chapter 150B, of the North Carolina General Statutes"); *see also id.* § 150B-51(b)(1)-(6) (2017) (not including violation of a court order as grounds upon which a trial court can "reverse or modify" a final decision of the agency); *but see id.* § 150B-51(d) (2017) (allowing a trial court to enter certain orders when it reviews "a final [agency] decision allowing judgment on the pleadings or summary judgment").

Because the trial court had jurisdiction to find new facts in order to determine whether DHHS was a disobedient party under its 17 March 2016 order, we conclude that the Court of Appeals erred in holding that the trial court no longer had jurisdiction over the case given the new factual and legal issues regarding the effect of DHHS's alleged waiver under 42 U.S.C. § 1396n(c).

**B.** **The Court of Appeals relied on inapposite authority in limiting the trial court's jurisdiction under the North Carolina Rules of Civil Procedure (Rule 70).**

The Court of Appeals majority relied on our decision in *Tennessee-Carolina Transportation, Inc. v. Strick Corp.* for the principle that a "trial court's authority [under the North Carolina Rules of Civil Procedure (Rule 70)] to supervise the agency's actions extends only to issues 'actually presented and necessarily involved in determining the case.' " *Pachas*, ___ N.C. App. at ___, 814 S.E.2d at 139 (quoting *Tenn.-Carolina Transp.*, 286 N.C. at 239, 210 S.E.2d at 183). The Court of Appeals majority then stated, "In other words, the trial court's continuing jurisdiction applies to issues involving 'the same facts and the same questions, which were determined in the previous *appeal.*' " *Id.* at ___, 814 S.E.2d at 139 (emphasis added) (quoting *Tenn.-Carolina Transp.*, 286 N.C. at 239, 210 S.E.2d at 183)).

The Court of Appeals majority then applied the above principle to the facts here and concluded that the trial court did not have jurisdiction over petitioner's motion and petition, and that petitioner would have to exhaust his administrative remedies, because "[t]he scope of [the 42 U.S.C. § 1396n(c)] waiver provision, and whether the State in fact applied for and received a waiver of the income limits provision, involve facts and legal questions that were *not* 'actually presented and necessarily involved' in the trial court's order addressing traditional Medicaid

coverage." *Id.* at ___, 814 S.E.2d at 139 (quoting *Tenn.-Carolina Transp.*, 286 N.C. at 239, 210 S.E.2d at 183).

We conclude that the Court of Appeals erred in relying on *Tennessee-Carolina Transportation* for the proposition that a trial court's jurisdiction under the North Carolina Rules of Civil Procedure (Rule 70) to ensure that an agency complies with the court's order necessarily ends when new facts and legal issues arise that were not "actually presented and necessarily involved" in the previous order. *Id.* at ___, 814 S.E.2d at 139 (quoting *Tenn.-Carolina Transp.*, 286 N.C. at 239, 210 S.E.2d at 183). The *Tennessee-Carolina Transportation* case involved application of the "law of the case" doctrine; it did not involve a motion to enforce a court order as we have here. *See Tenn.-Carolina Transp.*, 286 N.C. at 238-39, 210 S.E.2d at 183-84). The issue in *Tennessee-Carolina Transportation* was whether a decision we made in a former appeal in that case, in which we determined that Pennsylvania law governed the action, continued to apply. *See id.* at 238-39, 210 S.E.2d at 183-84. We concluded that the decision in the former appeal did continue to govern the case because "[t]he decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal." *Id.* at 239, 210 S.E.2d at 183. The full passage from *Tennessee-Carolina Transportation* which the Court of Appeals majority quotes only in part as authority for its rule, reads as follows:

> As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein *actually presented and necessarily involved in determining the case*, and the decision on those questions become the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal, provided *the same facts and the same questions, which were determined in the previous appeal,* are involved in the second appeal.

*Id.* at 239, 210 S.E.2d at 183 (emphases added) (quoting *Collins v. Simms*, 257 N.C. 1, 11, 125 S.E.2d 298, 305 (1962) (Parker, J., concurring in the result)); *see also Pachas*, ___ N.C. App. at ___, 814 S.E.2d at 139. Because *Tennessee-Carolina Transportation* involved the doctrine of the law of the case—and did not involve a motion to enforce a court order, which is the issue here—the Court of Appeals majority erred in relying on that case to limit the scope of the trial court's jurisdiction under the North Carolina Rules of Civil Procedure (Rule 70).

III. <u>Conclusion</u>

We vacate the Court of Appeals' decision concluding that the trial court did not have jurisdiction to consider whether DHHS violated the trial court's previous order. Accordingly, we remand to the Court of Appeals to address DHHS's argument that the agency did not violate the 17 March 2016 order because it allegedly obtained a waiver under 42 U.S.C. § 1396n(c), permitting it to create its own rules for CAP-DA eligibility apart from the requirements of 42 U.S.C. § 1396a(m). Because we conclude that the trial court had jurisdiction over petitioner's motion and petition, we need not

determine whether exhaustion of administrative remedies was inadequate or futile here.

VACATED AND REMANDED.

Justice EARLS did not participate in the consideration or decision of this case.